**In the Matter of Donald E. DUTTON and Darlene A. Dutton, Debtors.**

**Donald E. DUTTON, Plaintiff,**

**v.**

**FORT MONMOUTH FEDERAL CREDIT UNION, and Marvin Mostwill, Trustee, Defendants.**

**Adv. No. '80–0820.**

United States Bankruptcy Court, D. New Jersey.

April 3, 1981.

D. Gayle Loftis, Nutley, N. J., for debtor-plaintiff.

Vernon, Whitmore & McGuire by Lillian E. Harris, Shrewsbury, N. J., for defendant Fort Monmouth Federal Credit Union.

Marvin Mostwill, West Caldwell, N. J., trustee.

OPINION

VINCENT J. COMMISA, Bankruptcy Judge.

On October 21, 1980 the plaintiff herein filed a petition under Chapter 7 of the

Bankruptcy Code. Thereafter, on December 19, 1980 the debtor-plaintiff filed a complaint alleging that the Fort Monmouth Federal Credit Union (Credit Union) converted to its own use, without the permission of the plaintiff, monies of the debtor at a time when the debtor was insolvent. The plaintiff-debtor seeks an accounting, the return to said debtor of all converted monies and a declaration by this Court that any returned monies are part of the debtor's exempt estate.

The Court finds the facts to be as follows:

On March 26, 1980 the debtor borrowed $4,100.00 from the Credit Union and authorized deductions of $140.00 per month for thirty-six months from his earnings. On May 14, 1980 the plaintiff borrowed an additional $3,825.00 from the Credit Union. On June 6, 1980, the debtor authorized deductions of $300.00 per month from his pay. This deduction superseded the previous one; after the June 6 authorization, the total monthly deduction became $300.00.

On July 30, 1980 a $300.00 payroll allotment was made to the Credit Union. Payroll allotments in the same amount were made on August 28, 1980 and September 30, 1980. The statement of account maintained by the Credit Union indicates that from each of the payroll allotments of $300.00, $136.17 was applied to the March 26, 1980 loan of $4,100.00 and $132.59 was applied to the May 14, 1980 loan of $3,825.00. Thus, $806.28 was applied by the Credit Union to reduce the balance of the aforementioned loans.

Each form, entitled "Army Allotment Authorization", completed by the debtor, authorizing allotments, indicates that the sums so allotted were to be deposited in a savings or checking account. The June 6, 1980 allotment form specifically states: "Type of allotment-savings". Thus, on each occasion that the Credit Union applied payroll allotments to reduce the balance of the loans made to the debtor, it was withdrawing that amount from the debtor's savings and applying same to reduce the loan balances. 32 C.F.R. 59, Voluntary Military Pay Allotments, at § 59.2(a) provides that voluntary allotments of military pay are limited to the purposes there enumerated. Section 59.2(a)(6) permits an allotment for the

(6) Payment to a banking institution or association for credit to an account of the allotter; Moneys thus credited to the allotter's account may then be used for any purpose in accordance with the desires and direction of the allotter. Only one such allotment under this paragraph shall be allowed for any service member.

Nowhere in § 59.2(a) is there permitted an allotment for the direct payment of a loan, with the sole exception being a loan for the purchase of a home. Thus, as both the pertinent regulations and the allotment forms indicate, any allotment of military pay must first go into an account for the credit of the allotter. Accordingly, the payroll allotments were allotted to a savings account for the credit of the debtor in the Credit Union, and were thereafter utilized by the Credit Union in the time and amounts hereinabove stated, to setoff the debtor's outstanding loan balances.

Assuming *arguendo* that the Credit Union possessed a right to setoff against the amounts allotted to the debtor's savings account, this right is limited by subsection 553(b) of the Bankruptcy Code. This subsection pertinently provides:

(b)(1) . . . [I]f a creditor offsets a mutual debt owing to the debtor against a claim against the debtor on or within 90 days before the filing of the petition, then the trustee may recover from such creditor this amount so offset to the extent that any insufficiency on the date of such setoff is less than the insufficiency on the later of—

(A) 90 days before the date of the filing of the petition; and

(B) the first date during the 90 days immediately preceding the date of the filing of the petition, on which there was an insufficiency.

Subsection 553(b)(2) defines "insufficiency" as the amount, if any, by which a claim

against the debtor exceeds a mutual debt owing to the debtor by the holder of such claim.

The setoffs here at issue all occurred within 90 days prior to the filing of the petition.

Section 553(b)(1) further limits the right of prepetition setoff to the balance of accounts as they stood at the beginning of the 90-day period or, if later, the first date on which there was an insufficiency. Any increase during that time in the unsecured position of the creditor represents an improvement in the creditor's position, and may be recovered if setoff. The trustee may recover the difference between any 'insufficiency' on the date of the prepetition setoff and the insufficiency on the "first date during the 90 days immediately preceeding the date of filing . . . on which there is an insufficiency." This difference is calculated as follows:

(1) Ascertain any amount by which the claim of the creditor exceeded the debt owing to the debtor on the date of the setoff.

(2) Ascertain the same figure for the date 90 days prior to the filing of the petition or for the first date during the 90-day period when the amount of the claim of the creditor exceeded the debt owing to the debtor.

(3) The trustee is entitled to recover any amount by which the figure in (2) exceeds that in (1). This "improvement in position" test is similar to a provision in the preference section, and has no predecessor in the Chandler Act.

4 *Collier on Bankruptcy*, (15th Ed. 1980), para. 553.08, p. 553–45.

Following this guide, the amount by which the claim of the creditor exceeded the debt owing to the debtor on the date of the setoff is $7,118.72.[1]

The amount by which the claim of the creditor exceeded the debt owing to the debtor ninety days prior to the petition is $7,907.63. The difference between the latter figure and the former is $788.91. Thus, assuming an otherwise valid setoff, $788.91 may be recovered from the Credit Union pursuant to subsection 553(b). Consistent with the above, the maximum permissible setoff in the instant matter is $17.37, the amount in the account ninety days prior to the filing of the petition. Any additional setoff negates the improvement of position test of subsection 553(b).

To the limit permitted by subsection 553(b), does the attempted setoff by the Credit Union otherwise comply with § 553? Subsection 553(a)(3) is of significant relevance, it is a limitation on the general acceptability of setoff found in subsection 553(a) to the extent that

(3) the debt owed to the debtor by such creditor was incurred by such creditor

(A) after 90 days before the date of the filing of the petition;

(B) while the debtor was insolvent; and

(C) for the purpose of obtaining a right of setoff against the debtor.

The prohibition of setoff contained in § 553(a)(3) is similar to that of § 553(a)(2)(B), and is designed to cover "the situation where the creditor incurs a debt to the debtor rather than merely acquires a claim". It prohibits the setoff of such debts when incurred within 90 days of filing, while the debtor was insolvent, and "for the purpose of obtaining a right of setoff against the debtor." *This provision* represents a codification of case law, and *is intended to cover the problem of setoff of bank deposits* made by the debtor within the 90 days prior to bankruptcy. 4 *Collier on Bankruptcy, supra*, para. 553.08, p. 553–44 (emphasis supplied).

The facts herein are as stated in § 553(a)(3)(A) and (B). It is uncontroverted that the payroll allotments or deposits were made within ninety (90) days of the filing of the petition. Subsection 553(c) provides:

---

1. There were, as recounted above, three setoffs. The sum of $7,118.72 reflects the amount by which the claim of the creditor exceeded the debt owing to the debtor on the date of the third and last setoff. This calculation duly reflects the effect of all of the setoffs and thus the improvement in position achieved by the creditor by virtue of the setoffs.

(c) For the purposes of § 553, the debtor is presumed to have been insolvent on and during the ninety days immediately preceding the date of the filing of the petition.

Was the debt, the three deposits made by the debtor into his account at the Credit Union, incurred by the Credit Union for the purpose of obtaining a right of setoff against the debtor? As noted above, subsection 553(a)(3) represents a codification of case law. 4 *Collier on Bankruptcy, supra,* para. 553.08, p. 553–44. In *In re PRS Products, Inc.,* 574 F.2d 414 (2d Cir. 1978), the court stated:

Ordinarily no preference is created when a bank sets off funds in a general deposit account against a debt owed to the bank by the depositor ... The bank's setoff exception however, applies only to deposits made in good faith, made in the due course of business, and subject to withdrawal at the will of the depositor... More importantly to the instant case, "The setoff exception does not apply where a deposit is accepted by a bank with an intent to apply it on a pre-existing claim against the depositor." *Miller v. Wells Fargo Bank Int'l Corp., supra,* 540 F.2d at [548] 557. See *Mayo v. Pioneer Bank & Trust Co.,* 270 F.2d 823, 836–7 (5th Cir. 1959), *cert. den.,* 362 U.S. 962, 80 S.Ct. 878, 4 L.Ed.2d 877 (1960); *Cusick v. Second National Bank,* 73 App. D.C. 16, 17–18, 115 F.2d 150, 151–52 (1940); *Goldstein v. Franklin Square Nat'l Bank,* 107 F.2d 393, 394 (2d Cir. 1939); *Citizen's Nat'l Bank v. Lineberger,* 45 F.2d 522, 529–30 (4th Cir. 1930). (at 418, citations omitted.)

See also *Constructora Maza, Inc. v. Banco de Ponce,* 616 F.2d 573 (1st Cir. 1980); *In re Multiponics, Inc.,* 622 F.2d 731 (5th Cir. 1980).

The factual situation in *PRS Products, supra,* is strikingly similar to the instant factual pattern. Therein, the court observed

"The bankruptcy judge found that the bank deposits of PRS Products, Inc. from January 17 to January 31, 1974, totaling about $30,000.00 were made and received as payments on the bankrupt's indebtedness to Mandan [Bank]. During this short time period, Mandan withdrew approximately $30,000.00 from the checking account of PRS Products, Inc., *each withdrawal following quickly after a deposit.* As of January 31, 1974 the company's obligation to Mandan was fully repaid. During this period the company's checking account, as a practical matter, was not allowed to exceed $350.00. The evidence amply supports the bankruptcy judge's conclusion that these deposits from January 17 to January 31, 1974 were made and accepted with an intent to apply them on the pre-existing claim. Accordingly, these deposits were properly found by the bankruptcy judge to be recoverable preferences. (at 418, emphasis supplied)

The evidence adduced herein clearly answers the posed question in the affirmative. The loan application for the May 14, 1980 loan provides that the loan was to be repaid by the allotment. Further, it is uncontroverted that the monies deposited therein on June 30, 1980, August 20, 1980 and September 30, 1980 were on each respective date of deposit setoff against to reduce the outstanding loan balance. It would be inconsistent with the facts to assert that the monies deposited pursuant to the payroll allotments were available for the use of the depositor, they were accepted by the Credit Union with the intent to setoff same against the outstanding balance of the aforementioned loans.

■ Thus, all of the factors set forth in subsection 553(a)(3) are herein present. The allotments were made after ninety (90) days before the filing of the petition, the debtor is presumed insolvent during the ninety (90) days preceding the filing of the petition, and the allotments or deposits were made, as indicated on the loan application and the timing of the setoffs, for the purpose of obtaining a right of setoff against the debtor.

The setoff herein was in contravention of § 553(a)(3) and the Credit Union is ordered to return the $806.28 setoff to the plaintiff.

The statement of account maintained by the Credit Union and introduced into evidence by the plaintiff is accepted by the Court as an accounting of all monies transferred from plaintiff's account with the Credit Union.

Plaintiff has requested punitive damages as described hereinabove. "Punitive or exemplary damages are sums awarded apart from compensatory damages and are assessed when the wrongdoer's conduct is especially egregious. They are awarded upon a theory of punishment to the offender for aggravated misconduct and to deter such conduct in the future." *Leimgrubber v. Clairidge Associates, Ltd.,* 23 N.J. 450, 455, 375 A.2d 652 (1977) and authorities cited therein.

■ The facts before this Court reveal no especially egregious conduct or aggravated misconduct. Defendant setoff three allotments or deposits into the account of the plaintiff-debtor. The only loan application before this Court indicates that the loan was to be repaid by allotment. The allotments or deposits into the account were authorized by the plaintiff and he indicated to the lender that the loan would be repaid by allotment. The relationship between the allotments and the loan was manifest; when the plaintiff borrowed the second sum, he authorized an increased allotment. Moreover, although § 553(c) of the Bankruptcy Code creates a presumption of insolvency during the 90-day period preceding the filing of the petition, the evidence adduced does not show that the defendant knew of the plaintiff's financial difficulties or that the filing of the petition was imminent, and that therefore the setoffs were in contravention of the Bankruptcy laws.

Accordingly, plaintiff's request for punitive damages is denied.

Submit the appropriate orders, in accordance with the above.