**In re The UNION CARTAGE COMPANY, Debtor.**

**The UNION CARTAGE COMPANY, Plaintiff,**

v.

**DOLLAR SAVINGS & TRUST COMPANY, Defendant.**

**Bankruptcy No. B82–356–Y. Adv. No. 82–105.**

United States Bankruptcy Court, N.D. Ohio.

Feb. 24, 1984.

Joseph C. Lucci, Youngstown, Ohio, for Dollar Savings & Trust.

James H. Beck and Gary Gilmartin, Canfield, Ohio, for plaintiff.

## FINDING AS TO SETOFF

H.F. WHITE, Bankruptcy Judge.

This matter is before the court on the complaint of the debtor, The Union Cartage Company, for the turnover of money. The defendant, the Dollar Savings & Trust Company, claims possession of the funds pursuant to a valid setoff.

At the pre-trial on November 29, 1983, the parties waived their right to an evidentiary hearing and agreed to stipulate to the facts and file briefs. Based on the stipulated facts and the record, as contained in the official court file, the court makes the following Finding of Fact.

## FINDING OF FACT

1. On March 15, 1982, The Union Cartage Company (hereinafter referred to as Cartage) filed for relief under Chapter 11, Title 11 U.S.C., in the United States Bankruptcy Court for the Northern District of Ohio.

2. Prior to filing for relief, Cartage was indebted to the Dollar Savings & Trust Company (hereinafter referred to as Dollar) on two separate loan obligations secured by five tractor trucks and six semitrailers in which Dollar had the first, best, valid, and perfected security interest in each of said tractors and trailers.

3. Cartage maintained its general checking account, No. 050–097–772, with Dollar.

4. On December 15, 1981, ninety days prior to Cartage's filing for relief, Cartage had a balance in said checking account of $50,512.33.

5. On December 15, 1981, ninety days prior to Cartage's filing for relief, there was a balance due and owing by Cartage to Dollar on the two aforesaid loan obligations in the sum of $173,456.25.

6. On February 10, 1982, Cartage had a balance in said checking account of $33,-980.17.

7. On February 10, 1982, as a result of substantial delinquencies by Cartage in the repayment of its two loan obligations with Dollar, Dollar setoff the sum of $33,224.80 from the monies which Cartage had on deposit in said checking account.

8. Said setoff was the result of mutual debt between Cartage and Dollar.

9. On February 10, 1982, prior to setoff, Cartage owed Dollar on the two aforesaid loan obligations a balance of $176,960.88.

10. On or about February 8, 1982, Cartage voluntarily returned all of the tractors and trailers to Dollar that Cartage had pledged as collateral security for Cartage's various loans with Dollar. Said collateral was subsequently sold at various times after March 15, 1982, with the consent and approval of Cartage, yielding a gross sum of $93,800.00; sale expenses were $5,000.00 and Dollar realized net proceeds from said sale of $88,800.00.

11. On February 8, 1982, Cartage deposited the sum of $12,343.77 into the aforementioned checking account.

12. The President of Cartage, D.J. Goodridge, and the Vice-President of Cartage, Edward J. Brown, together with their respective spouses, Lois Jean Goodridge and Gail M. Brown, gave their personal guarantees on the two aforesaid loan obligations.

13. On February 10, 1982, the date of the setoff, Dollar dishonored checks drawn on the aforementioned checking account of Cartage which had been presented to Dollar for payment.

## ISSUES

In the Stipulation of Facts the parties have distilled their differences into two questions of law. The parties have stipulated that:

The parties are in agreement that, pursuant to Title 11 U.S.C., Section 553, Dollar had the right to setoff the sum of $33,224.80, which Cartage had on deposit with Dollar, and that Cartage would not be entitled to recover any amount so setoff, but for the following two (2) legal issues raised by Cartage:

1. Should Cartage be given credit for the value of the collateral returned to Dollar two (2) days prior to date of setoff, in determining the amount of insufficiency at the date of setoff, when said collateral was not sold by Dollar until various dates subsequent to Cartage's filing for relief on March 15, 1982?

2. Does Dollar have the right to setoff against the funds of Cartage that were deposited on February 8, 1982, two days prior to setoff?

## LAW

A creditor's right to a setoff is recognized in section 553(a) of the Bankruptcy Code. That section provides in pertinent part:

(a) Except as otherwise provided in this section and in sections 362 and 363 of this title, this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case, ...

The parties have stipulated that Dollar's setoff meets the prima facie requirements of this section. Their dispute concerns whether any of the exceptions contained in section 553 can be applied to avoid Dollar's setoff.

## I

One limitation on a creditor's right to setoff a mutual debt under section 553(a) is found in section 553(b):

(b)(1) Except with respect to a setoff of a kind described in section 362(b)(6) or 365(h)(1) of this title, if a creditor offsets a mutual debt owing to the debtor against a claim against the debtor on or within 90 days before the date of the filing of the petition, then the trustee may recover from such creditor the amount so offset to the extent that any insufficiency on the date of such setoff is less than the insufficiency on the later of—

(A) 90 days before the date of the filing of the petition; and

(B) the first date during the 90 days immediately preceding the date of the filing of the petition on which there is an insufficiency.

(2) In this subsection, 'insufficiency' means amount, if any, by which a claim against the debtor exceeds a mutual debt owing to the debtor by the holder of such claim.

The first issue raised by Cartage concerns the determination, under this provision, of the insufficiency on its loans from Dollar.

Both parties agree that the insufficiency on December 15, 1981, was $122,943.92. They reach this figure by subtracting the checking account balance ($50,512.33) from the loan balance ($173,456.25).

The parties disagree, however, on the amount of the insufficiency on February 10, 1982, the date of the setoff. On that date Cartage had $33,224.80 in its checking account and it owed Dollar $176,960.88 on its two loans. Based on these figures, Dollar calculates the insufficiency to be $142,980.71.

Cartage, on the other hand, argues that the value of the collateral surrendered to Dollar on February 8, 1982, must also be subtracted from the loan balance to determine the insufficiency. Cartage argues that the value of the collateral was $88,-800.00, which represents the amount realized by Dollar when the collateral was subsequently sold. Accordingly, Cartage maintains that the insufficiency on February 10, 1982 was $54,180.71.

Section 553(b) was derived from section 547, the preference section of the Bankruptcy Code. 4 Collier on Bankruptcy, paragraph 553.15[2] (15th ed. 1982), citing H.R.Rep. No. 595, 95th Cong., 1st Sess. 185 (1977), U.S.Code Cong. & Admin.News 1978, p. 5787. It authorizes the recovery of any amount offset by a creditor that constitutes an improvement over its position on the date ninety days before the date the petition was filed.

In most cases involving a bank's setoff of deposits, the "improvement in position test" can be calculated in a straight-forward manner. One merely calculates the difference between the amount owed the bank and the balance in the debtor's account on the respective dates in question. In the present manner, however, Cartage argues that the value of the collateral received by Dollar before the setoff must also be subtracted from the loan balance.

Cartage argues that the court cannot ignore the obvious fact that Dollar improved its position by gaining possession of collateral valued at $88,800.00. If Cartage is correct, then Dollar would have improved its position by the sum of $68,763.21. Cartage would then be entitled to recover the entire $33,224.80 that was setoff.

Cartage has failed to cite a case which supports its construction of section 553(b). It is doubtful that such a case could be found, because Cartage appears to have misconstrued this section.

Cartage states in its brief, that Dollar, by receiving possession of the collateral, improved its position "over and above other general unsecured creditors by the enormous sum of $88,800.00 from their (sic) position ninety (90) days prior to the filing date". This statement is incorrect. A creditor with a claim secured by collateral does not improve its position with respect to creditors with unsecured claims merely by gaining possession of the collateral. To determine if Dollar improved its position, one must first examine the claim held by Dollar upon which it based its setoff.

It is common to speak of creditors as being "secured" or "unsecured". Under the new Bankruptcy Code, however, it is more correct to refer to claims, not creditors, as being "secured" or "unsecured". *Barash v. Public Finance Corp.*, 658 F.2d 504 (7th Cir.1981); *In re Conn*, 9 B.R. 431 (Bkrtcy.N.D.Ohio 1981); *In re McCormick*, 5 B.R. 726 (Bkrtcy.N.D.Ohio 1980). This distinction arises from section 506(a) of the Bankruptcy Code, which provides, in pertinent part:

(a) An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim. . . .

Thus under section 506(a) the claim of a so-called "undersecured creditor" is actually two claims, one secured and one unsecured.

This distinction is important in the present matter because "insufficiency" in section 553(b) is defined in terms of "a claim".[1] Without regard to the setoff, it is clear that Dollar, for the purpose of the Bankruptcy Code, held two claims against Cartage.[2] It held a secured claim in the amount of $88,800.00, which was the value of the collateral securing the loans to Cartage, and it held an unsecured claim on the balance of the loan indebtedness.

■ Under section 506(a) a secured claim is always fully secured. It follows that a creditor cannot improve its position with respect to a secured claim. A secured claim therefore, cannot be subject to an insufficiency under section 553(b). Stated

differently, only an unsecured claim can be subject to an insufficiency.

■ The Court finds, therefore, that Cartage's argument must be rejected. Dollar's repossession of the collateral did not reduce the amount of the insufficiency on the unsecured portion of its claim against Cartage. Thus, Cartage may not recover the setoff pursuant to section 553(b).[3]

## II

■ The second legal issue raised by Cartage concerns Dollar's right to setoff the $12,343.77 which was deposited in Cartage's account on February 8, 1982. Cartage cites section 553(a)(3) to support its charge that Dollar did not have the right to setoff the $12,343.77. Section 553(a)(3) prohibits a creditor from setting off a debt under the following conditions:

(3) the debt owed to the debtor by such creditor was incurred by such creditor—

(A) After 90 days before the date of the filing of the petition:

(B) while the debtor was insolvent: and

(C) for the purpose of obtaining a right of setoff against the debtor.

The Finding of Fact establishes conclusively that Dollar incurred this debt within ninety days of the filing of the petition. Section 553(c) provides a presumption that Cartage was insolvent during this period.[4]

1. 11 U.S.C. Section 553(b)(2) provides as follows: "In this subsection, 'insufficiency' means amount, if any, by which a claim against the debtor exceeds a mutual debt owing to the debtor by the holder of such claim."

2. Section 506(a) accords secured status to a claim "subject to setoff under section 553". The words "subject to setoff" imply that a setoff has not already occurred. By according secured status to an amount subject to setoff, section 506(a) protects the rights of creditors who are stayed from exercising their right to setoff by operation of section 362(a)(7). It appears that this is the sole reason for granting secured status to an amount subject to setoff. If setoff has already occurred before the petition is filed, section 506(a) is of no support to the creditor. In that case the creditor's right to the setoff must be determined under section 553. Only that amount which meets the requirements of section 553 will be deemed to be secured.

Thus, in the present case, for analytical purposes, Dollar will be deemed to have a secured claim only to the extent of the value of the collateral.

3. Assuming that Dollar's secured claim was at all relevant times $88,800.00, then the insufficiency on December 15, 1981 was $84,656.25 (the unsecured portion of the total loan indebtedness of $173,456.25) minus $50,512.33 which equals $34,143.92. On February 10, 1982 the insufficiency was $88,160.88 (the unsecured portion of the total loan indebtedness) minus $33,224.80 which equals $54,936.08. It is obvious, therefore, that Dollar did not improve its position.

4. 11 U.S.C. section 553(c) provides as follows: "For the purposes of this section, the debtor is presumed to have been insolvent on and during the 90 days immediately preceding the date of the filing of the petition."

Dollar has not attempted to rebut this presumption. The only issue remaining, therefore, is whether Dollar incurred this debt "for the purpose of obtaining a right of setoff against the debtor".

This issue involves a subjective element which requires the court to determine whether the "purpose" of the deposits was to enable the bank to obtain a setoff. One commentator states that "section 553(a)(3) condemns the deposit whether the malevolent 'purpose' is on the part of the debtor, on the part of the bank, or on the part of some third party." 4 Collier on Bankruptcy, paragraph 553.15[3] (15th ed. 1982). Such a purpose can be found where "the deposits are not accepted in the ordinary course of business, or are procured, accepted or 'built-up' for the real purpose of permitting the bank to obtain a setoff". *Id.*

Cartage argues that the facts clearly show that Dollar accepted the deposits in order to "build-up" Cartage's account for the purpose of obtaining a setoff. Dollar, on the other hand, does not refute Cartage's argument. Instead Dollar maintains that the deposits were collected funds at the time of the setoff and that it had a right to setoff because it gave "value" to Cartage by crediting the amount setoff against the loan indebtedness. Dollar also cites various provisions from the Ohio Uniform Commercial Code for the proposition that Dollar was a "holder-in-due-course" of the deposited checks. The Court finds that Dollar's brief is totally unresponsive to the issue under 11 U.S.C. section 553(a)(3).

The general rule applied to cases involving a bank's setoff of funds in a depositor's account was stated by the court in *In re PRS Products, Inc.*, 574 F.2d 414, 418 (8th Cir.1978):

> Ordinarily no voidable preference is created when a bank sets off funds in a general deposit account against a debt owed to the bank by the depositor.... The set-off exception does not apply where a deposit is accepted by a bank with an intent to apply it on a pre-exist-

ing claim against the depositor. (Citations omitted.)

In applying this rule to the facts of the case, the court in *PRS Products* found that the setoff was avoidable. The court noted that in the span of about two weeks approximately $30,000.00 was setoff from recent deposits. The court noted that in each case the setoff followed "quickly after a deposit". *In re PRS Products, Inc. supra,* at 418.

*In re Dutton*, 15 B.R. 318 (Bkrtcy.N.J. 1981) is a case with strikingly similar facts. In that case the court found that on three separate occasions the creditor setoff funds on the very date they were deposited. In applying these facts to the rule *In re PRS Products, supra.*, the *Dutton* court stated:

> It would seem inconsistent with the facts to assert that the monies deposited pursuant to the payroll allotments were available for the use of the depositor, they were accepted by the Credit Union with the intent to setoff same against the outstanding balance of the aforementioned loans. *In re Dutton, supra.* at 321.

The facts in this case at bar require a similar finding. These facts show that the setoff occurred only two days after the deposits were made. On the day the deposits were made, Dollar knew that Cartage was in severe financial difficulty because that was the date when the collateral was returned to Dollar. Dollar, itself, established that the deposits did not become collected funds until February 10, 1982, the date of the setoff. (See Affidavit of Harry Swank, Vice-President of Operations of Dollar, attached to Dollar's brief). The obvious inference is that Dollar waited until the funds became collected before it exercised its setoff.

Dollar states that Cartage would have been entitled to withdraw all the funds in its account, including the deposit of February 8, 1982, prior to the date of setoff. This self-serving statement is hardly persuasive, however. The fact remains that on February 10, 1982 Dollar dishonored checks drawn on the Cartage account.

Thus, the court finds that the deposits were accepted not for the use of Cartage, but rather to enable Dollar to obtain a setoff.

Furthermore, the court notes that the Cartage management may have caused Cartage to give Dollar a preference. The facts indicate that the principal officers of Cartage were personally liable on the loans from Dollar. Cartage deposited the funds in question on the same date that it surrendered the collateral to Dollar. Dollar's setoff of these recently deposited funds reduced the personal liability of the principals. Thus, it can be inferred that the deposits were made for the purpose of giving Dollar a right to setoff.

### CONCLUSION

Although Dollar did not improve its position under 11 U.S.C. section 553(b), the Court finds that Cartage may avoid Dollar's setoff to the extent of $12,343.77 pursuant to 11 U.S.C. section 553(a)(3). Accordingly, judgment will be entered in favor of Cartage in the amount of $12,343.77.