**In re SOUTHERN INDUSTRIAL BANKING CORPORATION, d/b/a/ Daveco, Debtor.**

**Thomas DuVOISIN, Liquidating Trustee, Plaintiff,**

**and**

**Bank of Commerce, Intervening Plaintiff,**

**v.**

**Emmett FOSTER, Defendant.**

**Bankruptcy No. 3–83–00372. Adv. No. 3–84–0180.**

United States Bankruptcy Court, E.D. Tennessee.

March 29, 1985.

Bernstein, Susano, Stair & Cohen, J. Thomas Jones, Knoxville, Tenn., for plaintiff.

Hunton & Williams, John A. Lucas, Knoxville, Tenn., for intervening plaintiff.

Lewis S. Howard, Knoxville, Tenn., for defendant.

CLIVE W. BARE, Bankruptcy Judge.

At issue is whether the debtor's loan to defendant within 90 days preceding bankruptcy constitutes an avoidable preferential transfer under 11 U.S.C.A. § 547(b) (1979) where the loan was made in exchange for defendant's promissory note secured by unmatured investment certificates owing by the debtor to the defendant.

Also at issue is whether defendant is entitled under 11 U.S.C.A. § 553 (1979) to set off against his liability on the promissory note the debt due him upon maturity of the investment certificates.

I

On March 22, 1982, the defendant Emmett Foster paid $400,000 to the debtor Southern Industrial Banking Corporation (SIBC) in exchange for four investment certificates. The investment certificates were scheduled to mature 12 months later on March 22, 1983, with accrued interest of $66,000.

On February 4, 1983, some six weeks before the certificates were to mature, defendant took out a $470,000 loan from SIBC, utilizing the investment certificates as collateral. Defendant executed a promissory note to SIBC for $480,956.02, consisting of the $470,000 principal plus interest and service charges. The promissory note was scheduled to come due on March 22, 1983, the same date as the investment certificates were to mature. Defendant executed an assignment of each of the investment certificates to SIBC to be held as collateral for the loan. Defendant also executed a security agreement identifying the four investment certificates as collateral for the loan. In addition to specifying the four certificates as collateral, the promissory note itself also purports to identify as collateral "the right of offset against your deposit accounts with us."

On March 10, 1983, before either the investment certificates or the promissory note came due, SIBC filed a voluntary chapter 11 petition in bankruptcy. Both the investment certificates and the promissory note came due as scheduled on March 22, 1983. By letter dated March 28, 1983, defendant tendered to SIBC $14,956.02 (the difference between the $480,956.02 loan balance and the $466,000 maturity value of the certificates). Defendant requested that SIBC apply the proceeds of the check, together with the proceeds of the matured certificates, in full satisfaction of his indebtedness under the promissory note. Subsequently, after appointment of a trustee in the chapter 11 case, the trustee returned the $14,956.02 check to defendant and declined to set off the investment certificates against the loan balance.

Defendant denied having any personal knowledge of SIBC's financial difficulties until sometime after he entered into the

loan transaction on February 4, 1983. Defendant testified that he took out the loan in February because he needed the money to pay another loan debt coming due at about that time. The SIBC loan officer who processed defendant's loan verified that another bank released to SIBC possession of the four investment certificates upon receipt of cashier's checks paying a debt to the other institution.

The loan officer testified that in making so-called "certificate loans" SIBC sometimes structured the loan to come due at a time later than the maturity date of the certificate in order to encourage the certificate holder to renew the certificate. Here, he acknowledged, the loan was structured to mature with the certificates.

Defendant testified that he opted to take out a loan at SIBC rather than to prematurely redeem the certificates because the penalty for early withdrawal was too severe. He further testified that when he obtained the SIBC loan he foresaw three options regarding the loan at maturity: (1) applying the proceeds of the matured certificates to repay the loan, (2) renewing the note, or (3) borrowing funds elsewhere to repay the loan. However, defendant acknowledged in his answer to the complaint and intervening complaint that he intended upon maturity of the promissory note and the investment certificates to apply the proceeds of the investment certificates in payment of the promissory note.

The trustee commenced this adversary proceeding on May 21, 1984, contending that the February 4 transfer of loan proceeds to defendant constitutes an avoidable preferential transfer under 11 U.S.C.A. § 547(b) (1979). Subsequently, Bank of Commerce, successor to SIBC, intervened as a plaintiff seeking judgment against defendant on the promissory note.

Defendant contends that the transaction was not a preferential transfer since it involved a collateralized loan transaction rather than an early redemption of the investment certificates. Defendant further asserts, in defense of his liability on the promissory note, a right of setoff under 11 U.S.C.A. § 553 (1979).

II

▮ The $470,000 transfer to defendant in exchange for defendant's promissory note on February 4, 1983, does not constitute a preferential transfer under 11 U.S.C.A. § 547(b) (1979).[1] In order to be an avoidable preference a transfer must have been "for or on account of an antecedent debt." 11 U.S.C.A. § 547(b)(2) (1979). Such was not the case here. The transfer was not in payment of SIBC's existing, antecedent debt under the investment certificates. Rather, the transfer was made in exchange for present consideration in the form of defendant's promissory note.

> [T]he Bankruptcy Code does not avoid every transfer of property made by the debtor within 90 days of bankruptcy, but only those preferential transfers that result in a depletion of the debtor's estate.... In order that a preference be effected, the transfer must diminish directly or indirectly the fund to which

---

1. This subsection provides:

> (b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of property of the debtor—
> (1) to or for the benefit of a creditor;
> (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
> (3) made while the debtor was insolvent;
> (4) made—
> (A) on or within 90 days before the date of the filing of the petition; or
> (B) between 90 days and one year before the date of the filing of the petition, if such creditor, at the time of such transfer—
> (i) was an insider; and
> (ii) had reasonable cause to believe the debtor was insolvent at the time of such transfer; and
> (5) that enables such creditor to receive more than such creditor would receive if—
> (A) the case were a case under chapter 7 of this title;
> (B) the transfer had not been made; and
> (C) such creditor received payment of such debt to the extent provided by the provisions of this title.
> 11 U.S.C.A. § 547(b) (1979).

creditors of the same class can legally resort for the payment of their debts.... 4 *Collier on Bankruptcy* ¶ 547.21 at 79–83 (15th ed. 1984).

█ "[T]he mere exchange of property of equal value within the 90 days preceding bankruptcy does not constitute a preference." 4 *Collier on Bankruptcy* ¶ 547.20 at 71 (15th ed. 1984). "Preference implies paying or securing a pre-existing debt of a person preferred. [citation omitted] Where one gives an insolvent person value for a transfer of property, where he makes an exchange of property, there is no preference." *In re Perpall,* 271 Fed. 466, 468 (2d Cir.1921).

Here the loan transaction was an exchange of property which in no way diminished the debtor's estate. As such, it does not amount to an avoidable preferential transfer under § 547(b).

█ However, the court disagrees with defendant's contention that he is entitled to set off his liability on the promissory note against SIBC's debt to him on the investment certificates. Section 553(a)(3) of the Bankruptcy Code provides:

(a) Except as otherwise provided in this section and in section 362 and 363 of this title, this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case, *except to the extent that—*

.　　.　　.　　.　　.

(3) *the debt* owed to the debtor by such creditor *was incurred* by such creditor—

(A) after 90 days before the date of the filing of the petition;

(B) while the debtor was insolvent; and

(C) *for the purpose of obtaining a right of setoff against the debtor.*

11 U.S.C.A. § 553(a)(3) (1979) (emphasis supplied).

The court is satisfied that defendant incurred his loan debt "for the purpose of obtaining a right of setoff" within the meaning of § 553(a)(3)(C). In determining the meaning of this statutory phrase, it is essential to note a critical difference between § 553(a)(3) and pre-Code law. Under the former Bankruptcy Act, a creditor could not set off claims against the bankrupt acquired by the creditor "with a view to such use and with knowledge or notice that such bankrupt was insolvent or had committed an act of bankruptcy." 11 U.S.C.A. § 108(b) (repealed 1978). The Bankruptcy Code modifies this limitation

to apply to a claim acquired within three months before the case at a time when the debtor was insolvent, without regard to knowledge or notice of insolvency on the part of the creditor, and adds a phrase, codifying case law, to expand the ... limitation to the situation where a creditor incurs a debt to the debtor rather than merely acquires a claim.

H.R.Rep. No. 595, 95th Cong., 1st Sess. 185, *reprinted in* 1978 U.S. Code Cong. & Ad.News 5787, 5963, 6145.

█ Section 553(a)(3) does not require, then, any showing that the creditor knew that the debtor was insolvent when the creditor incurred the debt to the debtor. Rather, the determinative inquiry is only whether the creditor, at the time of incurring the debt to the debtor, intended to apply that debt to offset the debtor's debt to the creditor. *Compare Niagara Mohawk Power Corp. v. Utica Floor Maintenance,* 31 B.R. 509 (Bankr.N.D.N.Y.1983) (power company not entitled to set off utility security deposit against debtor's utility debt since power company collected deposit, and thus incurred debt to debtor, for purpose of obtaining right to set off deposit against utility debt) *with Allbrand Appliance & Television Co. v. Merdav Trucking Co.,* 16 B.R. 10 (Bankr.S.D.N.Y.1980) (creditor trucking company entitled to set-off where it incurred debt to debtor for C.O.D. collections in ordinary course of business and not for purpose of offsetting against debt owed creditor for unpaid delivery service).

A finding that the creditor was aware of the debtor's financial difficulties may support the conclusion that the creditor incurred the debt for the purpose of setoff. *See e.g., Union Cartage Co. v. Dollar Savings & Trust Co.,* 38 B.R. 134 (Bankr.N.D.Ohio 1984). However, the statute clearly does not require such a finding.

Here, there can be no question that defendant incurred his loan debt to SIBC with intention that it be set off against SIBC's debt to defendant on the investment certificates. Indeed, in his answer to the complaint and intervening complaint, defendant readily states:

> The defendant avers that it was his intention upon maturity of the promissory note and the investment certificates to apply the proceeds of such investment certificates to the amount then payable to Southern Industrial Banking Corporation, all of which he sought to accomplish in accordance with the terms of his agreements regarding such loan transaction.

Defendant's Answer, ¶ 6.

The promissory note specifically purports to identify as part of SIBC's security "the right of offset against your deposit accounts with us." In addition, defendant testified as follows:

> Q. Now, on February 4 of '83 when you signed that promissory note, did you have any specific plan as to how you would repay that promissory note?
>
> A. Well, I had two options available to me, either through liquidation of the certificates or renewing the note there or renewing it elsewhere. I guess I had three options.

Deposition of Emmett Foster, at 21 (September 20, 1984).

The promissory note and the investment certificates were scheduled to mature simultaneously. The court is persuaded that the evidence establishes conclusively that defendant, at the time of the loan, envisioned the payment of his loan debt to SIBC by applying against that debt the amount due defendant on the investment certificates. The court is satisfied that de-

fendant incurred the loan debt to SIBC "for the purpose of obtaining a right of setoff against the debtor" within the meaning of § 553(a)(3). Defendant is not entitled to set off SIBC's debt on the matured investment certificates against his liability on the promissory note.

This memorandum constitutes findings of fact and conclusions of law, Bankruptcy Rule 7052.