In re **HOVDEBRAY ENTERPRISES,**
Debtor.

**David G. Velde, Trustee, Plaintiff,**

v.

**Border State Bank, Defendant.**

Bankruptcy No. 10–61196.
Adversary No. 11–6007.

United States Bankruptcy Court,
D. Minnesota.

May 4, 2012.

Robert Russell, III, Robert Russell III, Fergus Falls, MN, for Plaintiff.

Caren L. Stanley, Jon R. Brakke, Vogel Law Firm, Fargo, ND, for Defendant.

## ORDER FOR JUDGMENT

DENNIS D. O'BRIEN, Bankruptcy Judge.

This is a preference action brought by the Trustee plaintiff against the defendant Border State Bank. The matter was tried on February 28, 2012. Appearances are noted in the record of the proceedings. Having considered evidence received at the trial, heard the arguments of counsel and reviewed their briefs, the Court now makes this **ORDER** pursuant to the Federal and Local Rules of Bankruptcy Procedure.

## I

On July 13, 2010, the Bank perfected its security interest in the debtor's after acquired "inventory/accounts receivable," granted by the debtor in 2007, pursuant to a security agreement, securing a $350,000 note.[1] In 2010, the debtor ran into financial difficulties and stopped making payments on various obligations, including the debt to the Bank and payments on its lease.

The debtor and the Bank conferred, and the debtor agreed to retain a liquidation service to hold a going out of business sale. The going out of business sale occurred during the months July through September, 2010. Gross sale proceeds were $426,571.79. Of these proceeds, $256,422.02 went to the Bank to pay the note debt in full. The balance went to pay the expenses of the liquidation including payroll and sales taxes and to satisfy, in whole or in part, obligations owed to other creditors. All sale proceeds passed through the debtor's account at the Bank. The Bank held set off rights as to the account, which had a balance of $13,579.98 prior to the liquidation.

An involuntary bankruptcy petition was filed against the debtor on October 11, 2010. The July 13, 2010, filing of its financing statement by the Bank was on the 90th day prior to the bankruptcy filing. The plaintiff trustee filed this proceeding challenging the perfection as a transfer providing the Bank a voidable preference.

The Bank filed a motion for summary judgment, heard on September 13, 2011, arguing that 11 U.S.C. § 547(c)(5) provides the Bank a defense to its "floating lien" or "inventory/accounts receivable" security interest, perfected by the filing of the financing statement during the preference period. The Court denied the motion by order dated September 13, 2011, holding that § 547(c)(5) does not provide a defense to those security interests that are created

---

1. The security agreement was created in 2007 and a financing statement was filed at that time, but, in the wrong place, the County Recorder's Office for Lake of The Woods County. The Bank filed the statement in the right place, the Secretary of State's Office, on the 90th day before the bankruptcy filing.

prior to the preference period, but, perfected untimely during the preference period. *See Lange v. Inova Capital Funding, LLC.,* 652 F.3d 933 (8th Cir.2011).

Issues remaining for trial were:

1. Whether the liquidation payments made to the Bank during the preference period were ordinary course payments;

2. Whether the Bank's release of approximately $164,000 from the debtor's account to pay third party bills and expenses constituted new value;

3. Whether $26,480 of the liquidation proceeds was from the sale of fixtures, which security interest was perfected by the 2007 financing statements filed with the appropriate counties; and,

4. Whether the Bank has a set off defense against the plaintiff in the amount of $13,579.98.

The Court finds for the plaintiff on issues 1 through 3, and for the defendant on issue 4.

## II

*1. Whether the liquidation payments made to the Bank during the preference period were ordinary course payments.*

 The Bank argues that:

Based on business difficulties the Debtor encountered, the Bank and the Debtor agreed to retain the services of a liquidation company to conduct a "going out of business sale" for the Debtor. The terms of the contract were customary for this type of situation and the payments made to the Bank were in accord with the terms of the contract. Thus, the Trustee's claim is defeated by the provisions of 11 U.S.C. § 547(c)(2).

*Defendant's Trial Brief,* Feb. 21, 2012, p. 5.

Section 547(c)(2) provides:

(c) The trustee may not avoid under this section a transfer—

(2) to the extent that such transfer was in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee, and such transfer was—

(A) made in the ordinary course of business or financial affairs of the debtor and the transferee; or

(B) made according to ordinary business terms.

*See* 11 U.S.C. § 547(c)(2).

 Liquidation as part of cessation of the debtor's business was not "ordinary course." The going out of business sale and transfers of the proceeds from the sale to the Bank were not "ordinary course of business or financial affairs of the debtor and the transferee" nor were they "made in the ordinary course of business or financial affairs of the debtor and the transferee."

To make the determination as to whether the transfers were in the **ordinary course** between the Debtor and [creditor], the Court must engage in a "peculiarly factual analysis." *Lovett v. St. Johnsbury Trucking,* 931 F.2d 494, 497 (8th Cir.1991). This requires the Court to look at the "consistency of the transaction in question as compared to other, prior transactions between the parties." *Concast Canada, Inc. v. Laclede Steel Co. (In re Laclede Steel Co.),* 271 B.R. 127, 131 (8th Cir. BAP 2002). In conducting this analysis, the Court should consider:

(1) the length of time the parties were engaged in the transactions at issue;

(2) whether the amount or form of the tender differed from past practices;

(3) whether the creditor of the debtor engaged in any unusual collection or payment activity; and

(4) whether the creditor took advantage of the debtor's deteriorating financial condition.

*Concast,* 271 B.R. at 132 n. 3. In the Eighth Circuit, the timing of payments is the most important factor to consider. *Lovett,* 931 F.2d at 498.

*See Barnes v. Karbank Holdings, LLC,* 446 B.R. 350, 359 (Bankr.W.D.Mo.2011). None of the considerations enumerated in *Barnes* supports the Banks position.

2. *Whether the Bank's release of approximately $164,000 from the debtor's account to pay third party bills and expenses constituted new value.*

█ Section 547(c)(3) and (4) provide:

(c) The trustee may not avoid under this section a transfer—

(3) that creates a security interest in property acquired by the debtor—

(A) to the extent such security interest secures new value that was—

(i) given at or after the signing of a security agreement that contains a description of such property as collateral;

(ii) given by or on behalf of the secured party under such agreement;

(iii) given to enable the debtor to acquire such property; and

(iv) in fact used by the debtor to acquire such property; and

(B) that is perfected on or before 30 days after the debtor receives possession of such property;

(4) to or for the benefit of a creditor, to the extent that, after such transfer, such creditor gave new value to or for the benefit of the debtor—

(A) not secured by an otherwise unavoidable security interest; and

(B) on account of which new value the debtor did not make an otherwise unavoidable transfer to or for the benefit of such creditor.

*See* 11 U.S.C. § 547(c)(3)-(4).

The term "new value" is defined as:

(2) "new value" means money or money's worth in goods, services, or new credit, or release by a transferee of property previously transferred to such transferee in a transaction that is neither void nor voidable by the debtor or the trustee under any applicable law, including proceeds of such property, but does not include an obligation substituted for an existing obligation.

*See* 11 U.S.C. § 547(a)(2).

The Bank argues that:

. . . all the monies produced from sale of the Debtor's inventory and fixtures during the 90 days prior to the commencement of the Debtor's bankruptcy case were placed in an account at the Bank as to which the Bank held set off rights. From that account, the Bank released a total of approximately $164,000.00 to the Debtor to pay bills, purchase additional inventory, etc. Those releases constituted new value under either 11 U.S.C. § 547(c)(3) and/or (4) that would defeat the Trustee's preference claim.

Defendant's Trial Brief, Feb. 21, 2012, p 5.

Although the Bank does not elaborate on its argument, the defendant seems to be equating the deposit of liquidation proceeds in the debtor's account at the Bank with the creation of a security interest, due to the Bank's set off rights in the account. An account with set off rights is a secured claim in a bankruptcy case under 11 U.S.C. § 553(a). But, the Bank has not shown that 11 U.S.C. § 547(c)(3)(A) has been satisfied and the section does not provide the Bank a defense.

Neither does 11 U.S.C. § 547(c)(4). None of the proceeds from the liquidation sale that were deposited in the debtor's account with the Bank were subject to the Bank's setoff rights. Section 553 provides, in pertinent part:

 11 U.S.C. § 553—Setoff

(a) Except as otherwise provided in this section and in sections 362 and 363 of this title, this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case, except to the extent that—

(3) the debt owed to the debtor by such creditor was incurred by such creditor—

(A) after 90 days before the date of the filing of the petition;

(B) while the debtor was insolvent; and

(C) for the purpose of obtaining a right of setoff against the debtor (except for a setoff of a kind described in section 362(b)(6), 362(b)(7), 362(b)(17), 362(b)(27), 555, 556, 559, 560, or 561).

The liquidation proceeds transferred into the debtor's account at the Bank were transferred within the preference period while the debtor was insolvent for the purpose of satisfying an antecedent debt to the defendant.

To determine if funds were acquired by a bank for the purpose of obtaining a right of setoff courts consider whether the deposit was made in good faith, in the regular course of business and subject to withdrawal at the will of the depositor. *Matter of PRS Prod., Inc.*, 574 F.2d 414, 418 (8th Cir.1978); *In re Union Cartage Co. (Union Cartage Co. v. Dollar Sav. & Trust Co.)*, 38 B.R. 134, 139 (Bankr.W.D.Ohio 1984). "The set-off exception does not apply where a deposit is accepted by a bank with an intent to apply it on a preexisting claim against the depositor." *PRS Prod.*, 574 F.2d at 418, citing *Miller v. Wells Fargo Bank Int'l Corp.*, 540 F.2d 548, 557 (2d Cir.1976); *see also Union Cartage*, 38 B.R. at 139. If the deposit was made with the purpose of effecting payment to the bank § 553(a)(3)(C) is met and setoff is not allowed. *In re Tonyan Constr. Co.*, 28 B.R. 714, 729 (Bankr.E.D.Ill. 1983). If either the depositor or the bank intends that a deposit may not be withdrawn but must be used to satisfy the bank's claim, the deposit constitutes a voidable preference when other elements of that statute are met. *In re Applied Logic Corp. (New Jersey Nat'l Bank v. Gutterman)*, 576 F.2d 952, 962 (2d Cir.1978). *See also, Tonyan*, 28 B.R. at 729.

*See Kroh v. Commerce Bank of Kansas City, N.A.*, 86 B.R. 186, 191–192 (Bankr. W.D.Mo.1988). Accordingly, the defendant did not obtain a right of set off against the liquidation proceeds deposited in the account.

*3. Whether $26,480 of the liquidation proceeds was from the sale of fixtures.*

 The Bank's security interest in the debtor's fixtures was perfected in 2007 by the filing of the Bank's financing statement with the appropriate county recorder. But, the property claimed by the Bank to be fixtures, valued at $26,480, was portable shelving that was easily dismantled and sold without disturbing the premises. The shelves were not fixtures, but, were personal property of the debtor.

*4. Whether the Bank has a set off defense against the plaintiff in the amount of $13,579.98.*

 The funds in the debtor's account prior to the deposit of liquidation proceeds,

$13,579.98, were subject to the Bank's set off rights under 11 U.S.C. § 553(a).

## III

Based on the forgoing discussion, the plaintiff is entitled to judgment that $242,824.04, is recoverable by the estate from the defendant as a preference pursuant to 11 U.S.C. § 547. Therefore, it is hereby **ORDERED** that plaintiff shall have judgment against the defendant in the amount of $242,824.04.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**