**AMERICAN NATIONAL BANK AND TRUST COMPANY OF CHICAGO, ILLINOIS, Appellant,**

v.

**Joseph M. BONE, Jr., Trustee in Bankruptcy of John D. Schindler, Bankrupt, Appellee.**

**No. 17529.**

United States Court of Appeals Eighth Circuit.

July 8, 1964.

Terence C. Porter, of Welliver, Porter & Cleaveland, Columbia, Mo., made argument for appellant and filed brief with William M. Howard, St. Louis, Mo.

Everett S. Van Matre, of Van Matre & Van Matre, Mexico, Mo., made argument for appellee and filed brief.

Before VAN OOSTERHOUT, BLACK-MUN and MEHAFFY, Circuit Judges.

VAN OOSTERHOUT, Circuit Judge.

This is an appeal by American National Bank and Trust Company of Chicago, Illinois, (American Bank) from judgment of the district court adopting and confirming findings of fact and conclusions of law of the Referee in Bankruptcy denying American Bank a secured claim based upon a second Deed of Trust upon real estate of the bankrupt, John D. Schindler, upon the ground that such security constituted a preferential transfer voidable by the Trustee under § 60 of the Bankruptcy Act.

Mr. Schindler, a customer of the First National Bank of Centralia, Missouri, had loan needs in excess of the loan limits of the Centralia bank. In 1959 the Centralia bank arranged with its Chicago correspondent, American Bank, for the handling of the Schindler loan account. Loans in varying amounts were made to the bankrupt by the Centralia bank and sold without recourse to American Bank. All such loans were prearranged and secured by chattel mortgages upon livestock and crops. The aggregate of the loans at times ran up to $100,000.

In October 1960 American Bank learned that the bankrupt had sold a substantial amount of mortgaged beans and corn without applying the proceeds upon the mortgage debt. Thereupon, an officer of the bank made an investigation, arranged for the liquidation of the chattel security and for taking of additional security.

The additional security thereafter furnished included a $125,000 collateral note secured by second Deed of Trust upon bankrupt's real estate. Said deed also secured a $25,000 collateral note to the Centralia bank which such bank sought to establish before the Referee. The claim of the Centralia bank is not before us upon this appeal.

The collateral agreements were signed making the trust deed security for the bankrupt's debt to the American Bank. Aside from the preference issue, the validity of the Trust Deed is not challenged. The Trust Deed was recorded on November 21, 1960.

Mr. Schindler filed a voluntary bankruptcy petition on March 13, 1961, and was adjudged a bankrupt on the same date. It is undisputed that on the date of bankruptcy Schindler owed American Bank a principal balance of $38,430.97 and interest to date of bankruptcy of $496.63.

American Bank had on October 20, 1960, more than four months prior to bankruptcy, obtained from the bankrupt the chattel mortgage on 230 acres of growing fall wheat. The bankrupt's real estate was sold free and clear of the lien

of this chattel mortgage, with such lien being transferred to the sale proceeds. The value of the wheat was fixed at $12,000 and American Bank was allowed a secured claim in such amount. This finding is not challenged upon this appeal and its only significance is that if such $12,000 is paid, American Bank's claim will be reduced to the extent of payment.

Before the Referee the Bank claimed interest for the period subsequent to the filing of the petition and for attorney's fees. Such claims were disallowed and no error is here claimed with respect to the interest and attorney fee items.

American Bank was allowed an unsecured claim of $26,927.60 but was denied a lien for such amount under its Deed of Trust. This appeal is from the final order denying the secured claim based on the Deed of Trust.

American Bank's secured claim was on file when the Referee on May 5, 1961, ordered the sale of the bankrupt's real estate free and clear of claimant's lien, which lien was transferred to the proceeds. The proceeds of sale in the amount of $425,000 were collected by the Trustee. After payment of prior liens, $106,333.89 of the proceeds remained in the Trustee's hands, which amount is sufficient to take care of any secured claim American Bank may be entitled to.

The trial court, without hearing any additional evidence, affirmed by summary order the Referee's determination that the Trust Deed was a preferential transfer voidable under § 60 of the Bankruptcy Act. The presence of many of the elements of voidable preference are clearly established and there is no attack upon the finding that the Trust Deed was made within four months of bankruptcy, that it constituted a transfer of property for the benefit of the creditor, that it was based upon an antecedent debt and that no new extension of credit was involved.

American Bank upon this appeal urges that the Referee and the district court erred in denying its secured claim based upon the Trust Deed upon the ground that such transfer constituted a voidable preference for the following reasons:

1. There is no substantial evidence to support the finding that the bankrupt was insolvent on November 21, 1960, the effective date of the Trust Deed.

2. There is no substantial evidence to support a finding that American Bank had reasonable cause to believe the bankrupt was insolvent on the date the transfer became effective .

 Insolvency at the time of the transfer and reasonable cause to believe the debtor is insolvent are necessary elements of an action to set aside a preferential transfer under § 60. Such issues are ordinarily fact issues. In Teasdale v. Prosperity Co., 8 Cir., 290 F.2d 345, 348, we stated the applicable rule for review as follows:

"It is a settled rule of this and other courts that the findings of fact by a referee in bankruptcy, if supported by substantial evidence, are not clearly erroneous; and, if approved and confirmed and adopted by the district court, they will not be disturbed on appeal."

 Section 1 (19) of the Bankruptcy Act, which is here controlling, provides that a person shall be deemed insolvent whenever the aggregate of his property shall not, at a fair valuation, be sufficient in amount to pay his debts. The Referee in his opinion thus states the test of insolvency:

"The statute describes the controlling standard of valuation with one brief phrase: 'fair'.

"'Fair valuation' within the meaning of Sec. 1 (19) of the Act, means a value that can be made promptly effective by the owner of the property to pay his debts. Stern v. Paper [D.C.], 183 Fed. 228, 230, affirmed Paper v. Stern, 198 Fed. 642 (C.C.A.8th); In re Sedalia Farmers' Co-Op Packing and Produce Company, 268 Fed. 898, 900 (D.C.Mo.). The Court of Appeals for the Second Circuit citing Stern v. Paper with approval in Syracuse Engineering

Company v. Haight, 110 F.(2d) 468, 471, concludes that under the 'balance sheet test' of the Bankruptcy Act, 'insolvency' results when the aggregate of a debtor's property is not sufficient at a fair valuation to pay his debts, which means a fair market price that can be made available for payment of debts within a reasonable period of time, and 'fair market value' implies a willing seller and a willing buyer."

We believe such test as stated, when considered as a whole, properly reflects the law. American Bank objects to the language in the early part of the quotation with respect to value that can be made promptly effective. Standing in isolation, such statement is too broad. The latter statement from the Haight case more accurately states the law. The statute itself requires the valuation to be fair. See Pirie v. Chicago Title & Trust Co., 182 U.S. 438, 451, 21 S.Ct. 906, 45 L.Ed. 1171; Arkansas Oil & Mining Co. v. Murray Tool & Supply Co., 8 Cir., 127 F.2d 564, 566; 9 Am.Jur.2d Bankruptcy §§ 165, 1065.

The trial court set up a balance sheet based upon the evidence as follows:

"ASSETS:

| | |
|---|---|
| Stipulation | $ 55,664.08 |
| Livestock and Crops | 32,622.31 |
| 2005 Acre farm | 425,000.00 |
| Total | $513,286.39 |

"LIABILITIES:

| | |
|---|---|
| Secured (Stipulation) | $423,411.24 |
| Unsecured (Stipulation) | 90,693.83 |
| Total | $514,105.07 |
| Net Worth | —$818.68" |

The liabilities existing on November 21, 1960, were agreed to by stipulation. The value of the general assets was stipulated as reflected by the first line of the statement. American Bank urges that a higher valuation should be placed upon the livestock and crops. While there is evidence to support a higher valuation, we are inclined to think that the value assigned such items by the Referee is not clearly erroneous. The principal controversy is with respect to the valuation placed upon the 2005 acre farm of the bankrupt.

It is noted that in the trial court's balance sheet the assets and liabilities totalled over a half million dollars and the liabilities fell short of the assets by only $818. Such figure is less than one-sixth of one percent of the total liabilities. An increase in valuation in the real estate of less than fifty cents an acre would establish solvency.

The burden of proof is on the Trustee to establish insolvency. The only proof that supports the valuation of the real estate made by the Trustee is the fact that the sale of the land for $425,000 was approved by the Trustee and that such sale was consummated.[1]

The $425,000 sale was reported by the Trustee on April 28 as a private sale. Said report came only one week after

1. The bankrupt had on January 27, 1961, offered his farm for sale at public auction and had entered into a prearranged contract to sell it to the highest bidder at the sale. The high bid was $359,-000. The Trustee rejected such sale on April 21, 1961, stating that the reasonable value of the real estate is materially in excess of the contract price. Such rejection was approved by the Referee.

the prior sale by the bankrupt had been rejected. The Trustee offered no evidence of any steps which he might have taken to find a buyer for the farm. There is no explanation of how the offer submitted reached the Trustee.

On May 5, 1961, at the approval hearing, William Boschert, who had learned of the sale a few days before, offered to purchase the real estate for $450,000 upon the same terms as the reported purchasers' and tendered a down payment of $35,000 called for by such contract. The contract in connection with the reported sale provided that the purchasers could withdraw if they could not obtain financing, in which event the down payment would be considered rent on stated conditions. At the suggestion of a creditor, this option was withdrawn and removed. The reported purchasers consented to such change. Boschert submitted a financial statement showing considerable net worth, largely in nonliquid assets. He asked that the sale be held open until May 10, 1961, to enable him to arrange financing. Possession of the farm was to be given immediately. The reported purchasers insisted they would pay no more and that they would withdraw their offer if it were not accepted upon that day, stating as a reason that it was urgent that the crop be planted immediately. The Referee, after hearing from all the interested parties, approved the reported sale. No complaint is made that the Referee abused his discretion in approving the reported sale but it is strenuously urged that such hasty sale falls far short of establishing a fair valuation for the land and that this is particularly true in the absence of any showing of effort made by the Trustee to find a buyer. Related to the speed of the sale is the factor that 2005 acres constitutes a large tract of land and that purchasers with adequate means to purchase such a farm are relatively scarce.

Under such circumstances, the auction bid cannot be considered as substantial evidence as to the fair market value of the farm. The Referee's opinion discloses

American Bank offered substantial evidence that the fair value of the land was substantially more than the $425,818 value required to make the bankrupt solvent, including the following:

1. Two competent appraisers appointed by the Referee, whose qualifications are not challenged, valued the real estate at $455,000.

2. Appraisers for Equitable Life Assurance Society, who had placed a $300,000 mortgage on the farm in 1959, fixed the value of the land at that time at $450,000.

3. Three qualified witnesses placed the fair market value of the farm on the date of transfer at figures ranging from $500,000 to $549,000.

4. Substantial evidence appears in the record that the bankrupt's farm was highly fertilized and highly productive and far superior to the land in the vicinity and that noteworthy production records had been maintained by college extension service.

5. The evidence heretofore referred to shows that Boschert was seriously interested in attempting to purchase the farm for $450,000 and that he would make an offer for such amount if he could arrange the financing and if he were allowed five days for such purpose.

The foregoing is substantial evidence that the fair value of the land on the day of the transfer was considerably higher than the $425,000 valuation fixed by the Referee. The Trustee's claim that his cross-examination of some of the witnesses establishes the valuation fixed by the Referee is without merit. The Trustee offered no expert testimony as to the value of the farm.

In Cullers v. Commissioner, 8 Cir., 237 F.2d 611, the Tax Court had increased the value of the land for tax purposes. The taxpayer had offered expert testimony supporting his valuation. The

that he placed no reliance upon the auction sale in making his determination of value of the real estate.

Commissioner offered no testimony. We held that the testimony of the expert witnesses could not be arbitrarily disregarded. We stated:

"It would seem that, if the valuation placed upon the real estate by the taxpayers and their witnesses was too low, the Commissioner could have produced some qualified witnesses who would have said so. The lack of such evidence operates against the Commissioner's contentions. See Baltimore Dairy Lunch, Inc., v. United States, 8 Cir., 231 F. 2d 870; Mayson Manufacturing Co. v. Commissioner, 6 Cir., 178 F.2d 115.

"An appellate court should not substitute its judgment for that of the trial court when there is substantial evidence to support the decision of the trial court. However, even though there may be evidence to support the trial court's finding, the finding is clearly erroneous when the reviewing court on the entire record is left with a definite and firm conviction that a mistake has been committed. United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746; Baltimore Dairy Lunch, Inc. v. United States, supra." 237 F.2d 611, 617.

Upon the record before us in the present case, we conclude that substantial evidence is lacking to support the valuation finding made by the trial court with respect to the real estate or any finding that the fair value of the real estate on the date of transfer was less than $425,818, the minimum figure needed to support solvency of the bankrupt on that date. We find no reasonable basis for rejecting the expert testimony of value made by competent witnesses in its entirety. As we stated in Cullers, the Trustee, if he felt the value assigned to the land by the witnesses was too high, should have been able to readily find expert testimony to present to the court.

■ While what we have heretofore said is dispositive of this appeal, it is also our view that the Trustee has not met the burden resting upon him to establish the reasonable cause to believe issue. We have no quarrel with the basic law on this issue stated by the Referee. While we believe there is considerable doubt upon the basis of this record whether the facts and circumstances were such as to put the bank on inquiry as to the debtor's solvency in view of the substantial financial statements submitted by the borrower and the subsequent appraisements made of his property, we will assume without so deciding that the circumstances were such as to place the bank upon inquiry and thus make it chargeable with the notice of all facts that a diligent inquiry would disclose.

A diligent inquiry would have led to an investigation of the value of the real estate, the bankrupt's most valuable asset. There is a unanimity of opinion among the experts who have testified that the value of the real estate ranged upward from $450,000 which is a far greater sum than necessary to establish solvency. Additionally, it is highly improbable that such an investigation would have disclosed the $90,000 in unsecured claims held by some seventy-three creditors holding claims running from a few dollars to $11,000, some for personal and farm indebtedness and some in connection with the feed and fertilizer business operated by the bankrupt. The stipulation as to this indebtedness was made subsequent to bankruptcy and after claims had been filed. There were no suits against the bankrupt pending at the time of the bankruptcy.

■ We believe that the only reasonable inference to be derived from all of the evidence is that a careful and prudent investigation if made at the time of the transfer would not have disclosed that the bankrupt was insolvent.

■ The Trustee has failed to establish that the Trust Deed upon which American Bank relies is a voidable preference under § 60 of the Act.

Reversed and remanded with direction to allow unpaid balance as a secured claim against the proceeds of the sale of the real estate.