In the Matter of PRS PRODUCTS, INC., Bankrupt.

James H. HERZOG, Trustee in Bankruptcy of PRS Products, Inc., Appellee,

v.

MANDAN SECURITY BANK, Appellant.

No. 77–1747.

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 17, 1978.

Decided April 11, 1978.

Rehearing Denied May 8, 1978.

John C. McClintock, Rugby, N.D., argued, Carlan J. Kraft, Rugby, N.D., on brief, for appellant.

Stephen Plambeck, Fargo, N.D., argued, Robert L. Stroup II, Fargo, N.D., on brief, for appellee.

Before GIBSON, Chief Judge, LAY and STEPHENSON, Circuit Judges.

STEPHENSON, Circuit Judge.

The central issue on this appeal is whether certain transfers made by the bankrupt PRS Products, Inc. to Mandan Security Bank (Mandan) were voidable preferences in violation of the Bankruptcy Act, 11 U.S.C. § 96. The district court [1] in an order of March 17, 1977, affirmed the bankruptcy court's decision that the transfers were voidable. Mandan appeals from that order.

PRS Products, Inc. began operation in January 1973 as a wholly-owned subsidiary

---

1. The Honorable Bruce M. Van Sickle, United States District Judge for the District of North Dakota.

of PRS Products Manufacturing Company. The purpose of PRS Products, Inc. was to facilitate sales of snowmobiles and winter clothing manufactured by its parent company. During the year 1973 Mandan made a number of unsecured loans to PRS Products, Inc. pursuant to an agreement whereby the company was to have an unsecured line of credit up to $25,000 with the bank. On at least two occasions, however, the outstanding obligation exceeded $40,000. On December 14, 1973, Mandan made its final loan for $10,000. At that time the indebtedness of PRS Products, Inc. to Mandan totaled $20,000. Less than two months later PRS Products, Inc. had fully repaid its obligation to Mandan. Shortly thereafter the subsidiary, together with its parent company, filed bankruptcy.

The trustee of PRS Products, Inc. brought this suit against Mandan on June 24, 1974, claiming that the payments to Mandan from November 20, 1973, through January 31, 1974, were preferential transfers.[2] Judgment was granted to the trustee in March of 1977, in the sum of $50,982.02.[3] Mandan appealed the judgment to the district court, which affirmed the same. This appeal followed.

Mandan initially argues that there is no substantial evidence to support a finding that PRS Products, Inc. was insolvent on October 26, 1973, November 20, 1973, and in January of 1974. More specifically, Mandan contends that there is no evidence that the bankrupt's assets were given a fair valuation.

█ In order to establish a voidable preference under 11 U.S.C. § 96, the trustee must prove that the bankrupt was insolvent at the time of the transfer in question. *American Nat'l Bank & Trust Co. v. Bone,*

333 F.2d 984, 985–86 (8th Cir. 1964). The test of insolvency is stated in 11 U.S.C. § 1(19) as follows:

A person shall be deemed insolvent within the provisions of this title whenever the aggregate of his property, exclusive of any property which he may have conveyed, transferred, concealed, removed, or permitted to be concealed or removed, with intent to defraud, hinder, or delay his creditors, shall not at a fair valuation be sufficient in amount to pay his debts[.]

█ Turning to the record before us, we note that the trustee and Mandan stipulated that the balance sheets of PRS Products, Inc. for the months of September, October and December of 1973 and February 1974 could be entered into the record without any further foundation, subject to any questions either party might raise as to their relevance or materiality. These balance sheets revealed an increasing excess of liabilities over assets, from approximately $86,000 in September 1973 to approximately $335,000 in February 1974. Willard Yule, general manager of PRS Products Manufacturing Company, testified that in October of 1973, Wayne Vedquam, the accountant and comptroller for both the subsidiary and parent companies, brought the September balance sheet to him. Yule stated that this balance sheet revealed that PRS Products, Inc. was in trouble as the liabilities exceeded the assets. Vedquam was present in court and available to testify if Mandan had any questions concerning the balance sheet figures. Vedquam, however, was not called as a witness. Under the circumstances we are persuaded that the unchallenged balance sheets raised a presumption of insolvency. We cannot say that the fac-

---

**2.** 11 U.S.C. § 96(a)(1) defines a preference in terms of six key elements: (1) a transfer of the debtor's property, (2) to or for the benefit of a creditor, (3) for or on account of an antecedent debt, (4) transfer must be made or suffered while the debtor is insolvent, (5) within four months of bankruptcy, and (6) effect of the transfer must be to enable the. creditor to ob-

tain a greater percentage of his debt than another creditor of the same class. *See* 3 Collier on Bankruptcy ¶ 60.02, at 758–59 (14th ed. 1977).

**3.** This sum included a payment made to Mandan on October 26, 1973, which the bankruptcy judge also held was a preferential transfer.

tual determination of insolvency by the bankruptcy judge is clearly erroneous.[4]

Mandan secondly contends there is no substantial evidence to support a finding that Mandan had reasonable cause to believe the bankrupt was insolvent on October 26, 1973, November 20, 1973, and in January of 1974. Mandan correctly argues that mere suspicion of insolvency is not enough to charge the creditor with reasonable cause to believe the bankrupt insolvent. *See, e. g., Inter-State Nat'l Bank v. Luther,* 221 F.2d 382, 392 (10th Cir.), *cert. granted,* 350 U.S. 810, 76 S.Ct. 77, 100 L.Ed. 726 (1955), *appeal dismissed per stipulation,* 350 U.S. 944, 76 S.Ct. 297, 100 L.Ed. 823 (1956). However, it is important to note that in determining reasonable cause, "it is well settled that notice of facts which would incite a man of ordinary prudence to an inquiry under similar circumstances is notice of all the facts which reasonably diligent inquiry would have disclosed." *Marks v. Goodyear Rubber Sundries, Inc.,* 238 F.2d 533, 534–35 (2d Cir. 1956) (footnote omitted). The question is whether Mandan had knowledge or notice of facts and circumstances which would incite a person of reasonable prudence under similar circumstances to make inquiry. If so, a further question is whether inquiry by Mandan would lead to a development of facts essential to a knowledge of the situation. If it would, Mandan is charged with the knowledge thereof. *See Eureka-Carlisle Co. v. Rottman,* 398 F.2d 1015, 1018 (10th Cir. 1968).

The bankruptcy judge found that the bank's own records indicated that the bankrupt exceeded its $25,000 approved line of credit on numerous occasions. The bank's records further reflected a substantial decline in the cash flow through the bankrupt's account from June through December of 1973. Additionally, Mandan's vice president, who personally handled 99% of the loans to PRS Products, Inc., was unable to procure a single financial statement of the subsidiary company even though several requests for one had been made beginning from the date of the first loan. Mandan's vice president was told that PRS Products, Inc. had only a prospectus and could not provide a financial statement. The bank's own records, coupled with the company's inability to produce a financial statement with the incredible excuse that only a prospectus was available, would have incited a man of ordinary prudence to make further inquiry.

Furthermore, the bankruptcy judge found that had Mandan's vice president made even minimal inquiry by insisting that the president of the parent company, the individual who procured the lending arrangement with Mandan's vice president, produce a financial statement for PRS Products, Inc., he would have learned as early as September or the first part of October 1973 that the company was insolvent. In addition, the bankruptcy judge found that Mandan's vice president had several other sources to whom he could have and should have turned by October 26, 1973. These sources would have readily disclosed the insolvency of the bankrupt. As the bankruptcy judge stated, "although Dahlen [Mandan's vice president] did not avail himself of these sources, he must nevertheless be charged with the information they possessed." Thus, we are persuaded that the finding that Mandan had reasonable cause to believe the bankrupt was insolvent when the preferences were made is not clearly erroneous.

Mandan next argues that the transfers to it by PRS Products, Inc. on October 26, 1973, November 20, 1973, and in January 1974 were protected under the set-off provision of section 68 of the Bankruptcy Act, 11 U.S.C. § 108.

The right of set-off under section 68 has on numerous occasions been applied

---

4. It is axiomatic that the bankruptcy court's findings of fact are to be accepted unless clearly erroneous. *Mann v. Shepard (In re Gervich),* 570 F.2d 247 at 249 n. 3 (8th Cir. 1978); *Solari Furs v. United States,* 436 F.2d 683 (8th Cir. 1971).

with respect to bank deposits.[5] *McDaniel Nat'l Bank v. Bridwell,* 74 F.2d 331, 333 (8th Cir. 1934). Ordinarily no voidable preference is created when a bank sets off funds in a general deposit account against a debt owed to the bank by the depositor. *Jensen v. State Bank,* 518 F.2d 1, 4 (8th Cir. 1975); *Farmers Bank v. Julian,* 383 F.2d 314, 324 (8th Cir.), *cert. denied,* 389 U.S. 1021, 88 S.Ct. 593, 19 L.Ed.2d 662 (1967). The bank's set-off exception, however, applies only to deposits made in good faith, made in the due course of business, and subject to withdrawal at the will of the depositor. *See, e. g., Miller v. Wells Fargo Bank Int'l Corp.,* 540 F.2d 548, 557 (2d Cir. 1976); 4 Collier on Bankruptcy ¶ 68.16 (14th ed. 1975). More importantly to the instant case, "The set-off exception does not apply where a deposit is accepted by a bank with an intent to apply it on a pre-existing claim against the depositor." *Miller v. Wells Fargo Bank Int'l Corp., supra,* 540 F.2d at 557. *See Mayo v. Pioneer Bank & Trust Co.,* 270 F.2d 823, 836–37 (5th Cir. 1959), *cert. denied,* 362 U.S. 962, 80 S.Ct. 878, 4 L.Ed.2d 877 (1960); *Cusick v. Second Nat'l Bank,* 73 App.D.C. 16, 17–18, 115 F.2d 150, 151–52 (1940); *Goldstein v. Franklin Square Nat'l Bank,* 107 F.2d 393, 394 (2d Cir. 1939); *Citizens Nat'l Bank v. Lineberger,* 45 F.2d 522, 529–30 (4th Cir. 1930).

■ The bankruptcy judge found that the bank deposits of PRS Products, Inc. from January 17 to January 31, 1974, totaling about $30,000, were made and received as payments on the bankrupt's indebtedness to Mandan. During this short time period, Mandan withdrew approximately $30,000 from the checking account of PRS Products, Inc., each withdrawal following quickly after a deposit. As of January 31, 1974, the company's obligation to Mandan was fully repaid. During this period the company's checking account, as a practical matter,

was not allowed to exceed $350. The evidence amply supports the bankruptcy judge's conclusion that these deposits from January 17 to January 31, 1974, were made and accepted with an intent to apply them on the pre-existing claim. Accordingly, these deposits were properly found by the bankruptcy judge to be recoverable preferences.

■ A much closer question is presented by the two withdrawals totaling approximately $20,000 which Mandan applied against PRS Products, Inc.'s obligations on October 26 and November 20, 1973. The deposition of Mandan's vice president, which is part of the record before us, reveals that PRS Products, Inc. had agreed to repay the loans to Mandan through checking account deposits at the bank. As the deposits came into the bank, Mandan at its own choosing could apply them on the notes. Although the bank permitted checks issued by the company to be paid out of the same checking account, nevertheless, each deposit under the terms of the agreement was potentially a repayment of the outstanding obligation.[6] In light of the terms of the agreement, the bankruptcy court found in substance that the deposits made by the bankrupt before the October 26 and November 20 withdrawals by the bank were accepted by the bank with the intent to apply them on a pre-existing claim. We cannot say this finding is clearly erroneous.

In *Farmers Bank v. Julian, supra,* 383 F.2d at 324, this court stated:

> Section 68(a) of the Bankruptcy Act, 11 U.S.C. § 108 applies and allows a setoff to the Bank unless the account has been accepted or built up for the real purpose of permitting the Bank to obtain a preference by way of setoff of the account. [footnote omitted.]

---

5. A bank's right of set-off was approved by the Supreme Court in *Studley v. Boylston Nat'l Bank,* 229 U.S. 523, 33 S.Ct. 806, 57 L.Ed. 1313 (1913), and in *New York County Nat'l Bank v. Massey,* 192 U.S. 138, 24 S.Ct. 199, 48 L.Ed. 380 (1904).

6. In *Merrimack Nat'l Bank v. Bailey,* 289 F. 468, 470 (1st Cir.), *cert. denied,* 263 U.S. 704, 44 S.Ct. 33, 68 L.Ed. 515 (1923), the court rejected the argument that a bank cannot become a preferred creditor because it may honor checks on the deposits. *Cf. Katz v. First Nat'l Bank,* 568 F.2d 964 (2d Cir. 1977).

Under the circumstances in this case, we are persuaded that the bankruptcy court's finding that the October 26 and November 20 withdrawals were recoverable preferences and not protected by the set-off exception is not clearly erroneous.

█ Mandan finally contends that the bankruptcy judge erred in finding that the October 26, 1973, transfer was made within four months of filing for bankruptcy. As the bankruptcy judge properly noted, most courts have held that monthly periods run from numerical day to numerical day. *See* 2A Collier on Bankruptcy ¶ 31.02[2] (14th ed. 1974). Because the filing of bankruptcy was on February 25, 1974, the October 26, 1973, transfer was within the four month period. Accordingly, we reject appellant's argument.

Affirmed.

GIBSON, Chief Judge, concurring and dissenting.

I am in full agreement with the majority opinion except insofar as it holds that Mandan's withdrawals from PRS Products, Inc.'s account on October 26, 1973, and November 20, 1973, constituted recoverable preferences. The majority sustained the finding of the bankruptcy judge that the deposits from which these withdrawals came were accepted by Mandan with the intent to apply them to a pre-existing claim and agreed with his legal conclusion that they were not, therefore, protected by the set-off exception of § 68 of the Bankruptcy Act, 11 U.S.C. § 108. My review of the record convinces me that the factual finding underlying this conclusion is clearly erroneous and that the withdrawals· of October 26 and November 20, which totaled $20,344.22, constituted permissible set-offs.

Under the Bankruptcy Act, no voidable preference is ordinarily created when a bank sets off funds in an account of general deposit against a debt owed to it by the depositor. *Jensen v. State Bank,* 518 F.2d 1, 4 (8th Cir. 1975); *Farmers Bank v. Julian,* 383 F.2d 314, 324 (8th Cir.), *cert. denied,* 389 U.S. 1021, 88 S.Ct. 593, 19 L.Ed.2d 662 (1967). If a bank accepts a deposit in good faith and in the ordinary course of business, it usually has a right to set-off under § 68 of the Bankruptcy Act. *See* 4 Collier on Bankruptcy ¶ 68.16, at 917–18 (14th ed. 1975). This right to set-off applies unless the account has been accepted or built up by the bank for the real purpose of permitting it to obtain a preference. *Jensen v. State Bank, supra* at 4; *Farmers Bank v. Julian, supra* at 324.

The record in the present case indicates that the deposits preceding Mandan's withdrawals of October 26 and November 20 were accepted by the bank in good faith and in the ordinary course of business. Indeed, the bankruptcy judge found "completely credible" the testimony of Mandan's vice-president Dahlen that Mandan had considered the deposits of PRS Products, Inc. during these months as having been made in the ordinary course of business. Moreover, the record shows that these deposits exceeded Mandan's withdrawals of October 26 and November 20 and that during this period Mandan regularly honored PRS Products, Inc.'s checks on its account, including overdrafts.

I do not believe that this record supports a finding of intent on Mandan's part to accept or build up PRS Products, Inc.'s account in order to create a preference. I am left with the definite and firm conviction that the bankruptcy judge erred in finding that the deposits made by PRS Products, Inc. before the October 26 and November 20 withdrawals were accepted by the bank with an intent to create a preference and to be applied to a pre-existing claim. To the contrary, the record shows that these deposits were accepted in good faith and in the ordinary course of business. These findings are illustrative of a judicial overkill and bring to mind Mr. Justice Black's observation in *Pearlman v. Reliance Insurance Co.,* 371 U.S. 132, 135, [83 S.Ct. 232, 234, 9 L.Ed.2d 190] (1962) that "[t]he Bankruptcy Act simply does not authorize a trustee to distribute other people's property among a bankrupt's creditors." Accordingly, I would allow Mandan to set off against its pre-existing claim the $20,344.22 which

it withdrew from PRS Products, Inc.'s account on October 26 and November 20.