**In re 4–S CORPORATION, d/b/a Buffalo Foods, Debtor.**

**William A. WEAR, Trustee of 4–S Corporation, Plaintiff,**

**v.**

**BUFFALO BANK, Defendant.**

**Bankruptcy No. 82–03839–S–11.**
**Adv. No. 83–0302–S–11.**

United States Bankruptcy Court,
W.D. Missouri, S.D.

Jan. 26, 1987.

J.R. Victor, Springfield, Mo., for plaintiff.

William L. Mauck, Springfield, Mo., for defendant.

## MEMORANDUM OPINION

KAREN M. SEE, Bankruptcy Judge.

The former debtor in possession filed this action against Buffalo Bank for recovery of funds from debtor's bank accounts which the bank applied to balances due on two promissory notes. The trustee was later substituted as plaintiff. Plaintiff contends the funds were taken by means of a pre-petition setoff. It is difficult to pin down the statutory authority on which plaintiff relies due to the sketchiness of plaintiff's complaint and post-trial brief. However, it is apparent, after examining the arguments at trial and the pleadings and briefs of the two parties, that both parties proceeded solely under 11 U.S.C. § 553(b), arguing as to whether the bank's alleged setoff of debtor's accounts within 90 days before bankruptcy was a recoverable transfer under § 553(b). Plaintiff does not question the validity of the bank's security interest in debtor's property, but rather, focuses on only two issues. First, plaintiff argues that application of accounts to a secured debt was a setoff, and in that argument apparently assumes that all setoffs are recoverable under § 553(b), regardless of whether the debt was secured by funds in the setoff accounts. Second, plaintiff argues at great length that the setoff must be voided because the bank did not give prior written notice of the alleged setoff. In reviewing the setoff question, the Court adds an issue as to whether application of the accounts was a setoff at all under § 553(b) or was instead was a foreclosure of a security interest.

## FACTS

Debtor operated a chicken processing plant. On November 13, 1981, the bank loaned debtor $612,000 secured by all of debtor's real and personal property, specifically including accounts receivable, inventory and proceeds of the foregoing. On December 1, 1981 UCC financing statements were filed in Dallas County, Missouri and with the Missouri Secretary of State. The financing statements included all inventory, accounts receivable and proceeds.

Nonpayment, failure to retain a skilled manager, and abandonment were events of default under the terms of the promissory notes and security agreements. Upon default, the notes allowed the bank to declare the balance immediately due and payable. Mr. Overton, debtor's accountant, testified that debtor was at least one month behind in payments to the bank as of September 13, 1982, the plant manager was discharged more than 30 days before the setoff of accounts, and the plant was closed on or before October 8, 1982. Thus, the notes were in default on October 8, 1982, the date of the setoff.

On October 8, 1982, without written notice to debtor, the bank declared the debt in default with the balance immediately due and applied the funds in debtor's accounts, totaling $99,444.98, to the balances of two of debtor's notes. Mr. Overton testified that at the time the accounts were applied, all funds in the accounts were the proceeds of debtor's inventory and accounts receiva-

ble. Sixty-eight days later, on December 15, 1982, debtor filed a Chapter 11 proceeding.

The undisputed testimony of Mr. Rayle, the bank's president, was that before applying debtor's account balances to the outstanding indebtedness, Dr. George, debtor's president, told Mr. Rayle that debtor was "going under" and to do whatever was necessary to protect the bank. Payment records for the notes show the October 8, 1982 principal payments totaling $99,-444.98. After these payment entries, entries dated October 21, 1982 state "Okayed this date, by:" and are initialed by Dr. George.

## CONCLUSIONS OF LAW

■ The initial question is whether the bank had a perfected security interest in debtor's bank accounts. Plaintiff did not contest the fact that the promissory notes were secured by a security interest in debtor's real and personal property. The security agreement portions of the loan documents and the UCC financing statements list inventory, accounts receivable and proceeds of same. Debtor's witness, the accountant, testified the funds in the accounts were proceeds from debtor's inventory and accounts receivable.

Generally, the statutes governing secured transactions in UCC Article 9 do not apply to transfers of interests in deposit accounts. § 400.9–104(k) RSMo. However, setoff of an account is governed by Article 9 if the funds in the account are proceeds of property in which the creditor had a security interest. § 400.9–104(k) RSMo; *Morris Plan Co. v. Broadway Nat. Bank,* 598 S.W.2d 557, 560 (Mo.App.1980). *Morris* also examines § 400.9–306 and concludes that under Missouri law, proceeds of collateral deposited in a bank account retain their characterization as proceeds. 598 S.W.2d 559. Here, the bank had a perfected security interest in accounts receivable, inventory and proceeds of same. The testimony from debtor's accountant was undisputed that the funds in the accounts were proceeds from inventory and accounts receivable in which the bank had a security interest. Accordingly, the Court finds the bank had a perfected security interest in the balances of the accounts as proceeds of its collateral.

■ The second question is whether application of the accounts constituted foreclosure of a security interest. Although the parties argued the case as a pre-petition setoff situation under 11 U.S.C. 553(b), the bank's application of accounts must also be examined as a foreclosure of a security interest under UCC Article 9. The distinction between setoff and foreclosure of a valid security interest was recently clarified in *Smith v. Mark Twain Nat. Bank,* 805 F.2d 278 (8th Cir.1986). In *Smith,* the Eighth Circuit Court of Appeals held that § 553 was not applicable to a valid foreclosure of a security interest in an account. Section 553 applies only when a bank exercises setoff against an account in which it claims no consensual security interest. 805 F.2d at 290–91. In the present case the application of accounts was not a setoff but rather was a foreclosure of a security interest in proceeds which plaintiff's own witness traced from accounts receivable and inventory to the bank accounts, so there was no transfer recoverable by the trustee under § 553(b). In applying the balances of the bank accounts to the debt, the bank was enforcing its rights in its collateral. Following *Smith,* the Court finds the bank's action in this case constituted foreclosure of a security interest in proceeds under UCC Article 9 and is not subject to an action to recover the funds as a setoff under 11 U.S.C. 553(b).

■ The last issue, whether the bank's action was invalid because it failed to give debtor written notice prior to application of the accounts to the indebtedness, involves notice under UCC Article 9. Under § 400.-9–504(3) RSMo., a creditor is required to send notice of an Article 9 foreclosure to debtor unless collateral is perishable, threatens to quickly decline in value, or is of a type customarily sold on a recognized market. Clearly, the bank accounts in

question do not fall within the exceptions to notice. In cases where the collateral does not fall within the listed exceptions, Missouri courts have interpreted 400.9–504(3) RSMo. to require written notice. *Executive Financial Services, Inc. v. Garrison*, 535 F.Supp. 263, 264–66 (W.D.Mo. 1982), *aff'd*, 722 F.2d 417 (8th Cir.1983); *Modern Auto Co. v. Bell*, 678 S.W.2d 443, 444 (Mo.App.1984).

However, the absence of written notice pursuant to 400.9–504(3) RSMo. does not invalidate a foreclosure. The result is simply that if no written notice is given, no deficiency judgment can be recovered. *Smith*, 805 F.2d 289. Thus, the bank's failure to provide written notice in the present case does not invalidate its foreclosure of debtor's accounts.

In addition, there was undisputed testimony that before the foreclosure of the accounts debtor's president told the bank president to do whatever was necessary to protect the bank. Moreover, on October 21, 1982, after debtor's president knew the accounts had been applied to the outstanding debt, he ratified the bank's action, as indicated on the payment records by his initials on the entry "Okayed this date, by:" following the entries for the applications of the accounts. Under these facts, written notice would not have served the underlying purpose of the notice requirement to apprise debtor of the bank's intended action so that debtor could take whatever steps necessary to protect its interest. The Court concludes the bank's foreclosure of debtor's bank accounts was valid.

The *Smith* opinion raises the question of whether plaintiff should have tried the case under § 547, the preference statute. Section 547(c)(5) allows the trustee to avoid a transfer within 90 days of bankruptcy which creates a security interest in inventory, receivables or their proceeds to the extent the transfer improves the creditor's position and prejudices other creditors holding unsecured claims. The provision is aimed at the secured creditor holding a "floating lien" on a debtor's inventory and receivables. However, under § 547(c)(5),

defendant would not prevail in this instance.

There was no evidence as to when the accounts receivable arose or the inventory was acquired. The security interest in after-acquired property became perfected only when it attached. The security interest in each item of inventory or each account receivable attached at the time the inventory came into stock or the account receivable arose. See *In re Savig*, 50 B.R. 1003, 1009 (Minn.1985). If the security interest in the receivables and inventory arose outside the 90–day period, foreclosure of the bank's interest in proceeds of that collateral does not fall within the ambit of § 547(c)(5). Even assuming the security interest in the property arose within the 90–day period, there was no evidence to establish improvement of position by the bank or prejudice to unsecured creditors. The burden is on the trustee to show by a preponderance of the evidence improvement of the bank's position and prejudice to the unsecured creditors. *In re Music House, Inc.*, 11 B.R. 139, 140 (Bankr.Vt. 1980). The evidence showed only that the bank accounts consisted of proceeds of inventory and accounts receivable, that the bank had a security interest in accounts receivable, inventory and proceeds (which interest attached at an unknown time) and that the bank, as a secured creditor, merely foreclosed within the 90 day period on the proceeds. Plaintiff failed to present any evidence necessary to consider a claim under § 547(c)(5).

Based on the foregoing, judgment is hereby entered against plaintiff and in favor of defendant Buffalo Bank.