In re KROH BROTHERS DEVELOP-
MENT COMPANY, 9221 Associates,
Beaumont Business Center Associates,
Longwood Associates, Debtors.

KROH BROTHERS DEVELOPMENT
CO., et al., Plaintiffs,

v.

COMMERCE BANK OF KANSAS
CITY, N.A., Defendant.

Bankruptcy Nos. 87–00640–1–11,
87–00644–1–11, 87–00646–1–11
and 87–00653–1–11.
Adv. No. 87–0181–1.

United States Bankruptcy Court,
W.D. Missouri.

May 3, 1988.

See also, Bkrtcy., 88 B.R. 997.

Cory Lipoff, Nachman, Munitz, Sweig,
Ltd., Chicago, Ill., Thomas M. Franklin,
Polsinelli, White, Vardeman, Kansas City,
Mo., for plaintiffs.

Edward E. Schmitt, Dietrich, Davis, Di-
cus, Kansas City, Mo., for Creditor's Com-
mittee.

Benjamin F. Mann, Blackwell, Sanders,
Matheny, Kansas City, Mo., for defendant.

MEMORANDUM AND ORDER AVOID-
ING TRANSFERS AS PREFER-
ENTIAL AND DENYING MOTION
OF COMMERCE BANK TO LIFT AU-
TOMATIC STAY

KAREN M. SEE, Bankruptcy Judge.

Two issues are before the Court: 1)
whether granting Commerce Bank four
mortgages and deeds of trust, and pledging
as security to Commerce two certificates of
deposit, constituted fraudulent or prefer-
ential transfers; and 2) whether Commerce
should be allowed to setoff the amount of a

certificate of deposit against debts owed by Kroh Brothers Development Company.

This proceeding arose from Commerce's motion for relief from automatic stay which sought to setoff a certificate of deposit. There was an evidentiary hearing on the motion on April 8, 1987. At the hearing and in its post-hearing brief, the Unsecured Creditors' Committee objected to Commerce's motion on the grounds that transactions underlying transfer of the C.D. to Commerce constituted voidable preferences pursuant to 11 U.S.C. § 547(b).

Subsequently, Kroh Brothers, the other above-referenced debtors (all Kroh-related), and the Creditors Committee filed this adversary action. The complaint alleges that two deeds of trust and two mortgages executed in favor of Commerce Bank were preferential or fraudulent and seeks an order avoiding those transfers. It also requests avoidance of a pledge of a certificate of deposit, recovery of the property and interest. Finally, it requests that Commerce's motion for relief from stay and its request to setoff the C.D. be denied. The motion and adversary were consolidated and the issues raised in the adversary were presented to the Court on stipulated facts and the exhibits supplementing the stipulations. By agreement of the parties, evidence from the April 8 hearing will also be considered in determining this matter. This Court's jurisdiction over the consolidated proceedings is not contested by any party. The Court has jurisdiction pursuant to 28 U.S.C. §§ 1334, and 157(b)(2)(F), (G) and (H).

### BACKGROUND FACTS

The parties stipulated to the following background facts relevant to all issues. All the above-referenced debtors filed Chapter 11 cases on February 13, 1987 and are currently debtors in possession of their estates. Kroh Brothers and Commerce had a long-standing banking relationship which extended into 1986. Commerce was a creditor of Kroh Brothers during the entire year of 1986. Kroh Brothers maintained a commercial account with and obtained loans from Commerce. George Kroh, an officer and substantial shareholder in Kroh Brothers, was a member of Commerce's board of directors from January through November, 1986.

On October 17, 1986, Commerce determined that Kroh Brothers had an uncollected funds position in its commercial account of between $2,000,000 and $2,500,000. This information was reported to the Bank's chief executive officer and the chairman of Commerce Bancshares. On October 18, representatives of the Bank and Kroh Brothers met to discuss the situation, and on October 20, Kroh Brothers executed a $7,000,000 promissory note in favor of Commerce Bank. At least $4,000,000 was paid out on the note. At that time, representatives of Commerce and Kroh Brothers discussed security for the note. Kroh Brothers suggested securing the note with second mortgages on real property as well as a pledge of its substantial cash deposits. By the first part of December, 1986, the chairman of Commerce Bancshares believed that the Bank would be unable to collect on the note "unless [it] had some other rights against collateral or against other assets in the bank .... [but] took no action." Stip. 10.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

### I. *The Deeds of Trust.*

The amended complaint seeks avoidance of four deeds of trust and mortgages as either fraudulent or preferential transfers. The parties stipulated that none of the transactions was entered into by Commerce with actual intent to hinder, delay or defraud any entity. Stip. 36. The Court finds the transfers were not fraudulent under § 548.

Concerning the claim of preference, Commerce indicated there were no disputed issues as to the preferential nature of these transfers. As to the first element of a preference, Commerce was a creditor of Kroh Brothers and the mortgages and deeds of trust were given to Commerce for Commerce's benefit. § 547(b)(1). The parties stipulated that each mortgage and

deed of trust was executed November 22, recorded November 25, and given to secure the $7 million loan previously executed on October 20, 1986. Thus, the transfers of debtors' interests in the properties were intended to secure an antecedent debt. § 547(b)(2). The parties stipulated that each mortgage and deed of trust meets the remaining three elements of a preference in § 547(b)(3), (4), (5). As to § 547(b)(5) specifically, the parties stipulated that the transfers enabled Commerce to receive more than it would receive in a Chapter 7 if the transfers had not been made. Stip. 22, 26, 31 and 35. Each of the five elements of a preference has been satisfied. The Court finds the deeds of trust and mortgages were preferential transfers and will be avoided.

## II. *The Certificates of Deposit*

The parties stipulated to the following facts concerning the certificates of deposit. The $7 million note was executed on October 20. On November 18, Kroh Brothers pledged as security to Commerce Bank a certificate of deposit issued by the Bank of Oklahoma ("Oklahoma C.D."). The pledge was made within 90 days before bankruptcy and "to secure antecedent debts owed by [Kroh Brothers] to Commerce Bank, at a time when [Kroh Brothers] was insolvent." Stip. 15. On December 15, the Oklahoma C.D. matured and the proceeds of $502,555 were deposited with Commerce in a certificate of deposit issued by Commerce Bank ("Commerce C.D."). The next day, December 16, Kroh Brothers pledged the Commerce C.D. to Commerce Bank. On March 16, 1987, after bankruptcy was filed, the Commerce C.D. matured in the amount of $509,779.79. The debtor in possession demanded the proceeds of the Commerce C.D. on April 8, 1987 but Commerce has retained possession.

In its brief Commerce focused exclusively on the transfer of the proceeds of the Oklahoma C.D. into the Commerce C.D. and the subsequent pledge of the Commerce C.D. by Kroh Brothers to the Bank. It contends that even if the pledge of the

Commerce C.D. by Kroh Brothers is preferential and could be avoided, only the pledge is avoided and, the Bank contends, it still retains its right of setoff against the Commerce C.D. Additionally, the Bank asserts that the pledge of the Commerce C.D. was not preferential because the Bank did not receive more by virtue of that pledge than it would have received in a Chapter 7 distribution if the Commerce C.D. had not been pledged.

Regardless of Commerce's argument as to the Commerce C.D., the proper focus should be on the November 18 pledge of the Oklahoma C.D. If that initial pledge was a preferential transfer, that status followed the proceeds which were rolled into a new C.D. issued by Commerce on December 15 and pledged by debtor to Commerce on December 16. Subsequent transfers between debtor and Commerce, which were merely substitutions of form of deposit of the same funds, do not cure any preference problem with the original transfer, consisting of the pledge of the Oklahoma C.D., or otherwise limit avoidability of the original transfer if it was preferential.

A debtor in possession has the same avoiding powers as a trustee. § 1107(a). Five elements must be proven in order for the debtor in possession to avoid a transfer of the debtor's interest in property as preferential. As listed in § 547(b), the transfer must be:

1) to or for the benefit of a creditor;

2) for an antecedent debt owed by debtor before the transfer was made;

3) made while the debtor was insolvent;

4) made within 90 days before bankruptcy; and

5) that enables the creditor to receive more than the creditor would receive
   a) in Chapter 7,
   b) if the transfer had not been made, and
   c) the creditor received payment of the debt to the extent provided by Title 11.

The parties stipulated that all but one element of § 547(b) have been met. See Stip. 12, 14, 15.[1] No one contends § 547(c)

1. Commerce also concedes that transfers of oth-   er security at issue herein, namely the granting

is applicable. The disputed issue is whether under § 547(b)(5) the pledge enabled Commerce Bank to receive more than it would have received in a Chapter 7 liquidation. As noted above, the subsequent roll-over from the Oklahoma C.D. to the Commerce C.D. is simply a substitution of form and irrelevant to the issues involved here. In Commerce's post-trial brief, page 5 (filed July 17, 1987), Commerce concedes that *unless* the Court finds a setoff should be allowed under § 553, then "the pledge [of the Commerce C.D.] would enable the bank to get more and § 547(b)(5) would be satisfied." [2] With this stipulation from Commerce, every element for a preference has been met, because later in this opinion the Court finds that setoff under § 553 is not valid.

Even though Commerce has conceded proof of § 547(b)(5) absent setoff, the law pertaining to that section will be reviewed briefly. First, whether the pledge of either the Oklahoma C.D. or the Commerce C.D. allows Commerce Bank to receive more than it would receive in liquidation proceedings is to be determined as of the date of bankruptcy. *Palmer Clay Prod. v. Brown,* 297 U.S. 227, 229, 56 S.Ct. 450, 451[1], 80 L.Ed. 655 (1936); *Barry v. Crancer,* 192 F.2d 939, 941[2] (8th Cir. 1951); *In re Tenna Corp.,* 801 F.2d 819, 822–23 (6th Cir.1986); *In re Sin–Ko, Inc.,* 72 B.R. 651, 654 (Bankr.N.D.Ohio 1987). Evidence from the April 8 hearing, used by the Bank in subsequent argument, shows that on February 13, the date of bankruptcy, Kroh Brothers had withdrawn all money on deposit with the Bank and the only remaining deposit was the Commerce C.D. Absent the Commerce C.D. the only other

security for the $7 million loan was second and third mortgages on Kroh properties. Price Blackwell, Commerce vice-president, testified that in his estimation that collateral was worth "a few hundred thousand dollars." Transcript p. 6, l. 11–21. However, the Court has already determined the mortgages were preferential and will be avoided.

Thus, if on the date of bankruptcy the Bank of Oklahoma C.D. had not been pledged (and the preferential mortgages are not considered), Commerce would have been an unsecured creditor for the full balance of the $7 million note. By obtaining the pledge of the Oklahoma C.D., and subsequently converting it into the Commerce C.D., which was also pledged to Commerce, the Bank improved its unsecured position by obtaining the certificate of deposit worth $502,555. Thus, Commerce went from entirely unsecured as to $7 million to the position of being secured for $502,555 and unsecured for $6.5 million. The same analysis applies to pledge of the Commerce C.D. If the pledges of security for the antecedent debt are allowed to stand, Commerce will be paid in full on the $500,000 secured portion and will reduce by that amount the unsecured portion which will receive only a pro rata distribution of a few cents on the dollar. "[T]he transfer of any security interest that converts an unsecured creditor into a secured creditor [enables] that creditor to receive a greater percentage of its claim than other creditors in the same class." *Deel Rent–A–Car, Inc. v. Levine,* 16 B.R. 873, 875[2] (S.D.Fl.1982), *aff'd* 721 F.2d 750 (11th Cir.1983).

Moreover, if distribution in bankruptcy to unsecured creditors is less than 100 per-

---

of the mortgages, enabled Commerce to receive more than it would have under a Chapter 7 liquidation. See Stip. 22, 26, 31 and 35.

**2.** Although in its answer Commerce denied plaintiffs' allegation that § 547(b)(5) has been met as to the pledge of the Oklahoma C.D., it did not specifically address this issue. The Bank's argument as to the Commerce C.D. is that it did not improve its position by the pledge of the Commerce C.D. It bases this assertion on evidence that on December 15, when the Oklahoma C.D. was rolled into the Commerce C.D., Kroh Brothers had $900,000 on deposit, so the Bank

had a right of setoff. Thus, the Bank argues it gained nothing when it acquired a security interest in the Commerce C.D. on December 16, because on December 15, it had already gained a right of setoff against the Commerce C.D. and the $900,000 on deposit. With respect to the pledge of the Oklahoma C.D., the Bank argues that on November 18 Kroh Brothers had $1,750,000 on deposit against which the Bank had a right of setoff. Again, the Bank apparently argues it gained nothing when it acquired a security interest in the Oklahoma C.D.

cent, any payment to an unsecured creditor during the preference period enables that creditor to receive more than he would have received in liquidation had the payment not been made. *In re Lewis W. Shurtleff, Inc.*, 778 F.2d 1416, 1421[3] (9th Cir.1985); *In re Uhlmeyer*, 67 B.R. 977, 980[9] (Bankr.Ariz.1986). Under the Kroh Brothers Development Company plan, confirmed in March, 1988, it was estimated that distribution to unsecured creditors in a Chapter 7 liquidation would be between 8.14% and 23.17%. Under these standards it is clear that § 547(b)(5) is met.[3] Moreover, as noted earlier, Commerce has agreed in its post-trial brief that unless the Court recognizes a right to setoff of the Commerce C.D., § 547(b)(5) has been satisfied. Accordingly, the pledge of the Oklahoma C.D. on November 18, 1986 will be avoided as a preferential transfer pursuant to 11 U.S.C. § 547(b).

■ Because transfer of the Oklahoma C.D. was preferential, the subsequent conversion of the funds into the Commerce C.D. is also preferential, constituting a mere substitution in the form of the deposit. Furthermore, Commerce has agreed that all elements of a preference exist as to the Commerce C.D. unless the Court finds Commerce would have the right of setoff on the Commerce C.D. As set forth below, the Court finds there is *no right of setoff*, so the Court further finds the pledge of the Commerce C.D. was a preferential transfer independent of the fact that the Commerce

C.D. was merely derived from the Oklahoma C.D.

■ When a transfer has been avoided pursuant to § 547, the trustee may recover the property or the value of the property from the transferee. § 550. Thus, Debtor may recover either the C.D. or its value from Commerce. The next question is whether the proceeds of the Commerce C.D. should be turned over to Debtor. That question turns on whether the Bank should be allowed to setoff the Commerce C.D.

The Creditors' Committee argues that if Commerce Bank has the right to setoff the Commerce C.D. it should not be allowed to do so until it has returned the value of the avoided transfer to Kroh Brothers. That argument is based on § 553(a)(1) and § 502(d).[4] Commerce Bank did not respond to that argument. Debtor contends that the debts are not mutual debts either because the Commerce C.D. did not mature until post-petition or because the amount owing under the Commerce C.D. was owed to the debtor pre-petition and became due post-petition to the debtor in possession, which Kroh contends is a different entity than the pre-petition debtor, thus precluding mutuality. Because the Court finds that the requirements of § 553 have not been met it will not be necessary consider those arguments.

Notwithstanding the Committee's argument that § 553(a)(1) is applicable, debtor and Commerce focused on § 553(a)(3).[5]

---

**3.** *Shurtleff*, 778 F.2d at 1421, explains the analysis to determine whether a creditor received more than it would have received in Chapter 7 if the transfer had not been made. The opinion states the creditor "must be charged with the value of what was transferred *plus* any additional amount he would be entitled to receive from a Chapter 7 liquidation." Under that analysis, if the transfer is not set aside, Commerce will receive the value of the collateral, $502,555 for the C.D. and "several hundred thousand dollars" for the mortgages, plus a pro rata distribution on the unsecured balance of its debt along with other unsecured creditors. This is necessarily greater than the distribution which would be received if the transfer had not been made, and Commerce, as an entirely unsecured creditor, received only a pro rata distribution of the transferred funds plus its pro rata share of the other funds payable to unsecured creditors.

**4.** Section 553(a)(1) prevents a creditor from exercising its right to *setoff* when "the claim of such creditor against the debtor is disallowed other than under section 502(b)(3)...."

Section 502(d) provides:
[T]he court shall disallow any claim of any entity from which property is recoverable under section ... 550 ... or that is a transferee of a transfer avoidable under section ... 547 ... of this title, unless such ... transferee has paid the amount, or turned over any such property, for which such ... transferee is liable under section ... 550....

**5.** There is case law that "section 553 applies only when a bank exercises a setoff against an account in which it claims no consensual security interest." *In re 4-S Corp.*, 69 B.R. 499, 501 (Bankr.W.D.Mo.1987), *citing Smith v. Mark*

That section disallows a creditor's right to setoff when the debt owed to the debtor by the creditor was incurred by the creditor within 90 days of bankruptcy, while the debtor was insolvent, and for the purpose of obtaining a right of setoff against the debtor. The parties stipulated to Kroh Brothers' insolvency and to the fact that the funds represented by the Commerce C.D. were placed on deposit with the Bank within 90 days of bankruptcy. The only issue is whether those funds were obtained by the Bank for the purpose of obtaining a right of setoff.

In support of its argument that this element has not been met Commerce points to the following evidence from the April 8 hearing. Dan Holman, a former Kroh employee, testified that when the Oklahoma C.D. matured "it would be administratively easier to keep that certificate at Commerce Bank so that we could deal with both the maturity and the assignment of that certificate all at one institution." Trans. 20, l. 16–21. Commerce also presented evidence that Kroh Brothers was allowed to withdraw all amounts in its commercial account up until bankruptcy. The balance of the commercial account was $1,750,000 on November 15, $900,000 in mid-December, and nothing was left in the account when debtor filed bankruptcy. Additionally, Holman testified that he did not roll the Oklahoma C.D. over into the Commerce C.D. with the intent to setoff the Commerce C.D. Trans. 8, l. 13–16. Finally the record reflects that Commerce Bank did not exercise any setoff rights or otherwise restrict withdrawal from the commercial account prior to bankruptcy. Trans. 9, l. 6–13.

However, evidence on the other side of the question shows that at the time the $7 million loan was made, Commerce representatives indicated "that at least some portion [of the collateral] would have to come from liquid assets" and that Commerce preferred "more liquid assets" to the mortgages offered by Kroh Brothers. Exh. 5, p. 2–3. Mr. Blackwell testified that by December 15 Commerce was aware that Kroh Brothers and related entities were experiencing severe financial difficulties. Trans. 11, l. 21–25. The parties stipulated that the Chairman of Commerce Bancshares "believed that Commerce Bank was not going to be able to collect the $7 million unless it had some other rights against collateral or against other assets in the bank." Stip. 10.

To determine if funds were acquired by a bank for the purpose of obtaining a right of setoff courts consider whether the deposit was made in good faith, in the regular course of business and subject to withdrawal at the will of the depositor. *Matter of PRS Prod., Inc.*, 574 F.2d 414, 418[7] (8th Cir.1978); *In re Union Cartage Co. (Union Cartage Co. v. Dollar Sav. & Trust Co.)*, 38 B.R. 134, 139 (Bankr.W.D. Ohio 1984). "The set-off exception does not apply where a deposit is accepted by a bank with an intent to apply it on a pre-existing claim against the depositor." 574 F.2d at 418, *citing Miller v. Wells Fargo Bank Int'l Corp.*, 540 F.2d 548, 557 (2d Cir.1976); *see also Union Cartage*, 38 B.R. at 139. If the deposit was made with the purpose of effecting payment to the bank § 553(a)(3)(C) is met and setoff is not allowed. *In re Tonyan Constr. Co.*, 28 B.R. 714, 729 (Bankr.E.D.Ill.1983). If either the

*Twain National Bank*, 805 F.2d 278, 290–91 (8th Cir.1986). Thus, if a bank has a valid security interest, its remedy is to foreclose its rights in the security interest rather than to seek setoff, so § 553 would not apply when a bank seeks to foreclose on a valid security interest. One could argue § 553 does not apply at all because Commerce had a security interest, by means of a pledge, in both the Oklahoma C.D. and the Commerce C.D. Alternatively, because the Commerce C.D. was issued December 15, and Commerce gained a security interest in it the next day, December 16, one could argue that § 553 applies only to the Bank's right of setoff

on December 15, the date the Oklahoma C.D. was rolled into the Commerce C.D. and the day before the Commerce C.D. was pledged as security for the antecedent note. If the Bank had a valid right to setoff in the Commerce C.D. on that date, its claim is fully secured to the amount of the setoff. § 506(a). However, such a determination as to whether § 553 applies to a secured fund is unnecessary because the issue may be resolved by determining Commerce's intent. If it obtained either of the C.D.'s for the purpose of obtaining a right of setoff against debtor, setoff will be prohibited under § 553(a)(3).

depositor or the bank intends that a deposit may not be withdrawn but must be used to satisfy the bank's claim, the deposit constitutes a voidable preference when other elements of that statute are met. *In re Applied Logic Corp. (New Jersey Nat'l Bank v. Gutterman),* 576 F.2d 952, 962[10] (2d Cir.1978). *See also, Tonyan,* 28 B.R. at 729[11]. Certificates of deposit are usually considered general deposits subject to withdrawal at the will of the depositor. However, when a certificate of deposit is pledged as security for a promissory note made on behalf of the depository bank, the funds represented by the certificate are no longer withdrawable at will. *Constructora Maza, Inc. v. Banco de Ponce,* 616 F.2d 573, 579 (1st Cir.1980).

The evidence clearly demonstrates that from the time Kroh Brothers and Commerce entered into negotiations on the $7 million loan until the issuance and pledge of the Commerce C.D., the Bank continually evidenced a desire to obtain liquid assets to collateralize the loan. The fact that the Commerce C.D. was at once pledged to the Bank further supports this finding. After the pledge of the Commerce C.D. was made, the funds would not have been withdrawable at the will of Kroh Brothers. Despite the testimony concerning the administrative convenience of Kroh Brothers, deposit of the proceeds of the pledged Oklahoma C.D. into the Commerce C.D., followed by pledge of the Commerce C.D., was clearly for the purpose of effecting a payment to the Bank. These findings support the Court's conclusion that whether looking before or after December 16, the date the Commerce C.D. was pledged, Commerce Bank should not be allowed to setoff the Commerce C.D. because it issued the C.D. "for the purpose of obtaining a right of setoff against the debtor," which is prohibited by § 553(a)(3)(C). Accordingly, Commerce has no right to setoff the Commerce C.D. pursuant to § 553.

The finding against Commerce on the issue of setoff also compels a finding that the pledge of the Commerce C.D. was a preferential transfer pursuant to § 547. The Bank contends that § 547(b)(5) was not met because it had a right to setoff the C.D. at the time the pledge was made on December 16. Because the Bank has no right of setoff pursuant to § 553, the pledge of the Commerce C.D. on December 16, like the pledge of the Bank of Oklahoma C.D. on November 18, constitutes a preferential transfer. Therefore, the pledge will be avoided, Commerce Bank will be directed to return the Commerce C.D. to Kroh Brothers and the Bank's Motion for Relief from the Automatic Stay will be denied. The Commerce C.D. matured with a value of $509,779.79 on March 16, 1987, following bankruptcy. The Court assumes Commerce has held the funds in an interest bearing account since that time. If so, Commerce is directed to turn over the funds from the Commerce C.D. plus all accumulated interest. If the funds have not been maintained in an interest bearing account, then Commerce is directed to turn over $509,779.79 with interest at the legal rate of nine percent from March 16, 1987 to the date of this Order and Judgment. For the reasons stated above, it is

ORDERED that the pledges of the Bank of Oklahoma C.D. and the Commerce Bank C.D. are avoided as preferential transfers. Commerce Bank shall turn over to debtor in possession Kroh Brothers Development Company the proceeds of the Commerce C.D. in the amount of $509,779.79, plus interest which has accrued since March 16, 1987, or in the alternative, if the funds were not maintained in an interest bearing account, interest at the legal rate of nine percent per annum. The Motion for Relief from Automatic Stay filed by Commerce Bank is denied. It is further

ORDERED that the following mortgages and deeds of trust executed by the debtors herein in favor of Commerce Bank on November 22, 1986 are avoided as preferential transfers:

1) deed of trust executed by 9221 Associates on the 9221 Ward Parkway Building;

2) mortgage executed by Beaumont Business Associates on the Beaumont Business Center;

3) deed of trust executed by Longwood Associates on the Longwood Business Center; and

4) deed of trust executed by Kroh Brothers Development Company on the Autobahn Shopping Center, Fredericksburg Shopping Center and Castle Hill.